### DECIDED IN THE

# SUPREME COURT OF APPEALS,

#### OF

# WEST VIRGINIA.

## Wheeling.

TERENCE GORMAN *vs.* ROBERT P. STEED.

January Term, 1864.

1. The Court of Appeals has jurisdiction in cases of unlawful detainer where possession only is the cause of controversy; possession being such an element of title and boundary to land, as to come within the purview of the Constitution, granting jurisdiction to the court.

2. A writ which purports to run in the name of the " *Commonwealth* of West Virginia," should be quashed by reason of not being in conformity to that clause of Article 1, Section 5, of the Constitution, providing that "writs shall run in the name of the State of West Virginia."

3. A motion to quash a writ, which is dated October 23d, 1863, and returnable on the "first Monday in July next," when the true date on which it was issued was between the 20th and the 25th of June, 1863, should be sustained, as the confusion of dates was calculated to delude the defendant as to the day when he should appear and answer the same.

4. A summons in unlawful detainer, should be returnable to Court, and not to rules.

5. No *alias* can be issued where the original has been returned executed : Code of Virginia, 1860, chap. 170, section 3.

> Quære : Whether the court might not, when necessary to preserve the original action, amend a defective summons in unlawful detainer and award an alias?

| Jan'y Term, | Gorman vs. Steed. | 1864. |
|---|---|---|

6. A United States revenue stamp is not necessary upon an alias summons, it being mesne process.

7. Land described as "a certain tract or parcel of land lying and being in the county of *Ritchie* near *Gorman's Tunnel*, and containing about ten acres,'' is insufficiently specified, in an action of unlawful detainer.

8. A general verdict for the plaintiff, finds every fact necessary to authorize it; and withholding the possession at the date of the institution of the suit is one of those facts, and it is unnecessary for a verdict in unlawful detainer to distinctly mention it.

*Robert P. Steed* sued out of the clerk's office of the circuit court of *Ritchie* county, a summons of unlawful detainer, dated October 23d, 1863, and 1st year of the *Commonwealth*, directed to the sheriff of said county, commanding him to summon *Terence Gorman* to appear before the Judge of the circuit court of said county, *at rules* to be holden in the clerk's office of said county on the "first Monday in *July next*," to answer the complaint of *Robert P. Steed*, that he, said *Gorman*, had unlawfully taken possession of and unlawfully withheld from him, said *Robert P. Steed*, the possession of "a certain tract or parcel of land, lying and being in the county of *Ritchie*, near *Gorman's Tunnel*, and containing about ten acres." On which the sheriff made the following return: "Executed on the within named Terence Gorman, by delivering to him a copy of the within summons on the 25th day of July, 1863, *being ten days before the first Monday of July*, 1863."

On the 3d day of August, *Steed* sued out of the same office another or alias summons, requiring the sheriff of *Ritchie* to summon *Gorman* to appear before the Judge of the circuit court of said county, on the first day of the September term next, to answer the complaint of said *Steed* for unlawfully withholding the possession of the premises as described in the original or previous summons.

On the first day of the September term the plaintiff *Steed* moved for a jury to try the cause, and thereupon the defendant *Gorman* appeared by attorney and moved to quash the original and alias summons', but the court overruled the motion of the defendant, to which he excepted. *Gorman*

then pleaded not guilty to the summons and action. A jury being impannelled the cause was tried and the following verdict returned, i. e.: "We the jury find that the defendant unlawfully withholds from the plaintiff, the possession of the premises in the within summons mentioned; and that he has not so held the possession thereof for three years prior to ·the institution of this suit, and therefore we find for the plaintiff.

The defendant moved the court to set aside the verdict, and grant a new trial, for the reason that the verdict was not responsive to the issue, and did· not find whether or not the defendant unlawfully withheld the premises in question on the day of the suing out of the summons in the cause; but the court overruled the motion, and the defendant by his attorney excepted. The court gave judgment for the possession of the premises, and costs. The court on a subsequent day of the term suspended the judgment for forty days, to allow the defendant time to obtain a supersedeas from this court.

The defendant applied to this court for a supersedeas, which was allowed, assigning for errors, in the judgment of the circuit court, as follows:

1. The court erred in not quashing the original summons. First, because it bears date on the 23d day of October, 1863; Secondly, because it was made returnable to a rule day, and not to a court; Thirdly, because the rule day to which it was so returned has not yet arrived and will not, till July, 1864.

2. The court erred in not quashing the alias, because it was not stamped with an internal revenue stamp, as required by the act of Congress: And because it is not a case in which an alias can be sued out, especially as the original had lost its validity if it ever had any.

3. The court erred in not quashing both original and alias, because neither of them described the land with sufficient certainty.

4. The court erred in not setting the verdict aside and awarding a new trial to the defendant, because it, the verdict,

is not responsive to the issue, and does not find whether the
defendant unlawfully withheld the premises in question, at
the time of the institution of the proceedings, and for other
reasons apparent on the face of the record.

*Benj. Wilson* and *G. H. Lee*, for the plaintiff in error.

As the petition for the supersedeas, in this case, states
the facts with sufficient clearness and precision, it is not
deemed necessary to do more than to refer to it for them.

On the first point, we maintain that the court should have
sustained the motion to quash the original summons, and
erred in overruling it. This summons was clearly void,
because returnable to a rule day, instead of to a term of the
court. The statute manifestly intends that the process in
such a case shall be returnable to a term of the court only,
and not to a rule day. There are no rules to be taken in
the office, in such a case, and the summons is to stand for
the declaration. The proceeding is intended to be a sum-
mary one, and it may be heard and determined at the term
to which it is returnable. There could be no reason in any
such case, to make the process returnable at a rule day, and
no propriety in doing so. To make it so returnable would
defeat the object of the statute, and hence it expressly
directs that it shall be made returnable to a term of the
court. The process in this case being, therefore, returna-
ble to a day and place not authorized by the statute, is
simply void and should have been quashed. That a process
returnable to an illegal and improper return day is void, is
a proposition for which no authority need be cited.

But the summons should have been quashed, because,
when it was served upon the plaintiff in error, it bore a date
that was false and impossible. It was served on the 25th
day of June, 1863, whilst it bore date on the 23d day of
October, 1863, a day then yet to come. A copy of the
summons was delivered to the plaintiff in error as the statute
requires, for the purpose of explaining the nature of the
complaint against him, and when and where he was to
appear and make his defense. It fixes the time by reference
to its own date. He is to appear on the first Monday in

July next. Next after what? Of course, after the date of
the summons, and that is the 23d day of October, 1863. So
that the day when, according to it, he was to appear and
make his defense, was a day then and still yet to come, to-
wit: the first Monday in July, 1864. Moreover, taking the
date of the summons as it stands, it was clearly illegal to
make it returnable to a day posterior to several intermediate
terms of the court. Even where a process may be made
returnable to a rule day, it must be made to some rule day
previous to the next term, and there is no authority to pass
over an intermediate term, and fix the return to a day
posterior. Thus the summons was plainly calculated to
deceive and mislead the plaintiff in error. He was
authorized to take it as it was expressed on its face, nor
was he bound to solve any question of error or mistake.
And being returnable to a day clearly improper and illegal,
he was entitled to have it quashed upon motion, whenever
it was produced and relied upon.

Upon the second point we maintain that the court
clearly erred in overruling the motion to quash what is
called the "alias" summons. If this is to be regarded as
an alias summons, there was no authority to issue it. The
original summons, (if that falsely dated on the 23d of Octo-
ber, 1863, is to be so regarded,) had been executed, and
there could be no authority to issue an alias, after service of
the original, as that is only provided for in the case where
the original has for any cause not been executed. If the
party desired, for any cause, to hold on to his original
summons, to save the three years, or for any other reason,
and to proceed upon it, he should have applied to the court
to quash the sheriff's return, and to correct and amend his
original summons, if that could be done, and if the court
allowed that motion, then to ask it to award him an alias
summons. He did nothing of this kind, but caused the
alias to be issued of his own authority, pending his original,
returned duly executed. This he clearly could not do, and
this alias summons, if sustainable at all, can only be sustained
as an original summons, by treating the words, "as we have

heretofore commanded you," as surplusage. But, certainly the plaintiff in error is not to be harassed by having two proceedings, of the same kind, for the same premises, pending against him at the same time: and as no pleadings, in writing, are contemplated in such cases, the court should have quashed the second summons issued pending the first on motion. But there is a fatal objection to the second summons, in the want of the stamp required by the act of Congress to provide internal revenue. See Pamphl. Ed. § 94, p. 83, and "Schedule B," p. 93, title, "Legal Documents." The bill of exceptions ascertains that there was no such stamp on this summons, [see p. 5 of the record;] and the act provides [see § 95, p. 83] that such a document or paper, issued without the required stamp, shall be deemed invalid and of no effect. This, of course, cannot be controverted as to an original process, by which a suit is commenced, for that is the language of the act, but it may be contended that the requirement of a stamp duty does not apply to any subsequent process in a cause, after it has commenced, and that the alias summons here was not liable to the stamp duty. But we apprehend the defendant in error cannot escape the penalty pronounced by the act, in this way. We have shown, we think, that the summons, if to be sustained at all, can only be sustained as an original summons and as such is confessedly within the act; and the defendant in error is of necessity placed in this dilemma: If he claims to uphold his summons as an alias in the cause commenced by the summons dated the 23d of October, 1863, then it was unauthorized and liable to be quashed because the original summons had been returned duly executed: if he claims however on the other hand to set it up as an original summons, then it is invalid and of no effect for want of the required stamp.

On the third point we maintain that the court should have quashed both the original and the alias summons, because neither described the land claimed with sufficient certainty. The summons by the statute stands for the declaration and should properly describe the premises sought to be recov-

ered.   And whilst a precise description of metes and bounds may not be indispensible it is safe to say that the premises demanded should be described with at least convenient certainty.   And of what is "convenient certainty" we have the legislative interpretation on the act concerning the action of ejectment, Code of Va. (1 ed.) ch. 135, § 8, p. 559. It must be such that from the description furnished, possession of the premises may be delivered.   This was the original rule and although its strictness would seem to have been somewhat relaxed in England, it has been uniformly adhered to in Virginia.   See *Turberville* v. *Long*, 3 H. & M. 309, *Bolling* v. *Mayor of Petersburg*, 3 Rand. 563, *Hitchcox* v. *Rawson*, 14 Grat. 526.   It is true that if the description in the declaration be imperfect, the defect may be cured by a proper description in the verdict; but if neither the declaration nor the verdict describes the premises with sufficient certainty, the judgment upon it cannot be sustained, but a repleader will be awarded; *Hitchcox* v. *Rawson*, above cited. Here as in the case last cited, the verdict gives no other description of the premises, than that contained in the declaration, and that description we maintain, was plainly uncertain and insufficient.   It calls for a tract or parcel of land in *Ritchie* county, near *Gorman's Tunnel*, containing *about* ten acres.   From such a description as this, how could the officer deliver possession?   The only locative call by which the identity of the land could be fixed within the wide limits of *Ritchie*, is that it was near "*Gorman's Tunnel*." But what and where is "Gorman's Tunnel?"   It is not found that it was a place that had acquired notoriety by that name, and the court could not judicially know that the place intended was a tunnel through which a railroad passed through a hill, and that such a place was necessarily one of notoriety.   But if the court could take notice of all this judicially, the difficulty is by no means removed.   The land is "near Gorman's Tunnel," but it is not ascertained in what direction from that place, north, south, east or west, or in what intermediate bearing if it lie in such, nor how near.   "Near" is a relative term importing proximity only,

but in a comparative and not an absolute sense; and there is here no criterion by which the degree of proximity can be ascertained.    There is nothing to fix the *pedis positio*.    A given place might be considered "near" another in one sense, and yet in another and by a different mode of comparison, it might be considered quite otherwise.    It is submitted that the description here is even more vague and uncertain than it was in *Hitchcox* v. *Rawson*, above cited.    There the premises were described as two hundred acres of land in and adjacent to the waters of Hughes' and Burnell's runs, being a portion of a tract of eleven hundred acres, of which the boundaries had been set out, and the verdict followed the description in the declaration.    The court held, that in such description, there was clearly a want of the requisite convenient certainty.

The Judge delivering the opinion of the court says "that there are runs known by those names, (Hughes' and Burnell's runs,) is only inferentially alleged, and if there be such streams within the boundary of the eleven hundred acres, it must still be left in doubt of what land 'in and adjacent to' their waters, possession is to be delivered in case of judgment for the plaintiff."    The judgment was accordingly reversed.    Here we say it must remain in doubt of what land "near" Gorman's Tunnel, if there be such a place in *Ritchie* county, possession was to be delivered.    Other parcels of land could be found as near the place named, as this, or nearer.    There is nothing to point out the particular tract intended.    If it be said the defendant was in possession, and his possession would aid in fixing the identity, the answer is that the ten acres recovered might be a part only of the land of which he was in possession, or he might have been in possession of several parcels of land in the neighborhood.    But a further answer is that precisely the same feature existed in *Hitchcox* v. *Rawson*, but it was evidently not considered as giving any legitimate aid in overcoming the objection, or as having any bearing on the question, because it is the description in the process taken from the record which is to guide the

officer and point out the precise land of which he is to deliver the possession. The quantity of land claimed is vaguely and imperfectly stated, and increases instead of lessening the uncertainty of the description, and the difficulty the officer must experience in delivering possession of the premises recovered. If the piece of land had been defined by metes and bounds, or in some other mode sufficient to mark its identity and separate it from the surrounding residuum, it might not have been material to designate the number of acres with precision, and might have sufficed to state the quantity within the defined boundary, as about ten acres. But as no metes and bounds had been given and no other sufficient description by which the parcel of land in controversy could be recognized and separated from the other land surrounding, we maintain that it was indispensable the summons or verdict should have stated the quantity so that the officer could know of how much land he was to deliver the possession.

We submit that the description of this subject, as a piece of land in *Ritchie* county, near Gorman's Tunnel, containing about ten acres, not merely lacks that convenient certainty which law and reason alike require in a case of this kind, but is so utterly vague and indefinite that any instrument, declaration, verdict or deed depending upon it for the identification of the subject intended to be embraced, would be void for uncertainty.

On the fourth point we maintain that the period to which the withholding of the possession is referred, is clearly that of the emanation of the summons. If not withheld at that time, no cause of action had accrued, and upon a subsequent withholding of possession, a verdict and judgment could not be sustained upon a summons which had issued previously. Here the verdict ascertains that the defendant unlawfully withholds from the plaintiff the possession of the premises, at the time of the verdict. It uses language in the present tense, "we find that the defendant unlawfully withholds," &c. It goes on to find that he had not so held the possession for three years prior to the institution of the

suit. For aught the verdict shows the defendant might have so held for three years prior to the date of the "alias," but not three years prior to the time when the summons dated 23d of October, 1863, really issued. It undertakes to find the facts from which the plaintiff's right to recover could be made to appear: yet finds nothing as to the withholding of the possession at the emanation of the summons. The finding might be strictly and literally true, and yet the defendant might not have withheld the possession at the time the summons issued. If he were a tenant, his tenancy might only have expired after the issuing of the summons and before the finding of the verdict. Or he may never have taken possession until after the summons. Suppose the finding had been that the defendant had not held the possession for three years prior to the verdict, instead of to the institution of the suit, would that have been sufficient? Clearly not, because the computation of the bar was to be to the latter period, and not to the former; and as the right to recover depended on the withholding the possession at the institution of the suit, and not the time of the trial, the finding should have referred such withholding of the possession to the date of the summons and not to the time of the verdict.

*J. S. Wheat* for the defendant in error.

BROWN, J., delivered the opinion of the court.

Between the 20th and 25th of June, 1863, *Robert P. Steed* sued out of the Clerk's office of the circuit court of *Ritchie* county, a summons of unlawful entry and detainer, in the words and figures following, to wit: "The Commonwealth of West Virginia, To the sheriff of *Ritchie* county, greeting: You are hereby commanded to summon *Terence Gorman* to appear before the Judge of our circuit court, for the county of *Ritchie*, at rules to be holden in the Clerk's office of said court on the first Monday in July next, to answer the complaint of *Robert P. Steed*, that the said *Terence Gorman* has unlawfully taken possession and unlawfully withholds from him, the said *Robert P. Steed*, the possession of a

certain tract or parcel of land, lying and being in the county of *Ritchie*, near Gorman's Tunnel, and containing about ten acres; and have then there this writ: Witness, *Wm. H. Douglass*, clerk of our said court, at the court-house of said county, this 23d day of October, 1863, and in the 1st year of the *Commonwealth*. WM. H. DOUGLASS." This writ was executed upon the defendant *Gorman* on the 25th day of June, 1863, ten days before the first Monday in July, 1863.

On the 3d day of August, 1863, the said *Steed* sued out of the said clerk's office an alias summons against the said *Gorman:* which was executed on the 25th day of August, 1863; but was not stamped with a United States revenue stamp. On the 21st day of September, 1863, *Steed* appeared by attorney and moved the circuit court of *Ritchie* county, to impannel a jury to try the cause upon the original and alias summons. Whereupon *Gorman* appeared by his attorney, and moved the court to quash the said writ, but the court overruled his motion, and he excepted.

*Gorman* then pleaded not guilty, and the jury impannelled to try the issue, found the following verdict: "We the jury find that the defendant unlawfully withholds from the plaintiff, the possession of the premises in the within summons mentioned: and that he has not so held the possession thereof, for three years prior to the institution of this suit, and therefore, we find for the plaintiff."

The defendant *Gorman*, then moved the court to set aside the verdict and grant him a new trial, for the reason that the verdict was not responsive to the issue, in failing, as he alleged, to find that the defendant unlawfully withheld the premises in question on the day of suing out the summons. But the court overruled the motion and he again excepted. Thereupon judgment was rendered for the plaintiff *Steed* against the defendant *Gorman*, for the possession of the premises in question. And the cause comes here upon a supersedeas to the said judgment, wherein the said *Gorman*, who was defendant in the court below, is plaintiff, and the said *Steed*, who was plaintiff below, is defendant. An objection to the jurisdiction of this court has been raised at the

threshold of this cause, and should be the first disposed of.

It is contended by the counsel for the defendant, that as the only ground of jurisdiction is that conferred by the constitution, where the title or boundaries of land may be drawn in question, and that as in this case the question of possession was the only matter in controversy, that therefore the case was not within the constitutional provision, and the court is without jurisdiction. A provision similar to our own existed in the constitution of Virginia, and yet the court of appeals of that State, have uniformly taken jurisdiction from a very early period, and repeatedly exercised it in cases of unlawful entry and detainer, and in cases of ejectment, in some of which, the question of possession alone, was the subject of controversy. And though the objection to the jurisdiction for the reason above stated has never before, that I am aware of, been made, nor directly decided by the court of appeals of Virginia, where the jurisdiction is precisely the same *quo ad* the matter in question, as that of this court. Yet in the case of *Tapscott* vs. *Cobbs et. als.*, 11 Grat. 172, it was held that, "a party in peaceable possession of land, being entered upon and ousted by one not having title, nor authority to enter, may recover the premises in ejectment upon his possession merely; and his right to recover cannot be resisted by showing that there is or may be an outstanding title in another, but only by showing that the defendant himself, either has title, or authority to enter under the title." And in the case of *Olniger* vs. *Shepherd*, 12 Grat. 462, it was held that, "in a proceeding for an unlawful entry or detainer, if the defendant has entered unlawfully, the plaintiff is entitled to recover without any regard to the question of his right of possession: and this though the land from which he is ousted, is the land of the Commonwealth or of the party who ousted him."

This exercise of jurisdiction without objection, is not without import, and would require a clear case to justify a departure from it. But independently of the jurisdiction thus uniformly exercised, the provision of the constitution

in Article 6, section 8, which is to be taken in its broadest sense is ample to meet the case here. It gives jurisdiction to this court in controversies concerning the title or boundaries of land. Possession is one of the elements of title, and a very important one too; and the statute requires that the premises of which the possession is claimed, shall be described in the summons: thus presenting in a double aspect the question of title and boundary within the meaning of the constitution. The motion therefore to dismiss the case for want of jurisdiction should be overruled.

The points made by the plaintiff and fairly arising upon the record of the case, are next to be considered. And the first error thus assigned, is in the court's not quashing the original summons, for several causes apparent on the face of the writ.

By the constitution, Article 1, section 5, it is declared that "writs shall run in the name of the State of West Virginia," but the original summons in this case does not run in that name, but in the name of the Commonwealth of West Virginia, and ought therefore to have been quashed for that cause.

Again, while the true date of the original summons was the day on which it issued, which was between the 20th and 25th of June, 1863, and not the day, viz: October 23d, 1863, on which it purported to bear date, and the true return day therefore was in July, 1863, and not July, 1864, as supposed, yet the confusion of dates was well calculated to delude the defendant as to the day when he should appear and answer the complainant; and therefore the said writ ought to have been quashed for that cause.

Again, the original summons was returnable to rules, while in such case it could only have been properly returnable to court. Chapter 170, of the Code of 1860, concerning process generally, and chapter 135, of the same Code, concerning the summary remedy for unlawful entry or detainer, are to be construed with reference to each other; and the general provisions of the former restrained and limited by the latter, by which it is manifest that the

summons in an action of unlawful entry or detainer, is to be returned to court and not to rules.

The second error assigned by the plaintiff, is the refusal of the court to quash the alias summons because it was not stamped, and because it was not a case in which an alias might be issued.

As the *alias* is but the continuation of the original, and dependent upon it, it must stand or fall with it; and the original being quashed for the causes assigned, the alias ought also to have been quashed.

The statute, section 3, of chapter 170, of Code of 1860, only authorizes the clerk to issue an alias where the original has not been executed, and not where it had been, as in this case, returned executed, and was therefore *functus officio.*    And without deciding that the court might not, in a proper case, where it was necessary to preserve the original action, amend a defective summons in unlawful entry or detainer, and award an alias, (upon which point it is not now intended to express an opinion,) it is yet clear that the alias should have been quashed for the reason that the original summons having been returned executed, there was no authority vested in the clerk to issue an alias in such case.    The objection that the alias summons had no United States revenue stamp affixed to it, is not well taken, as no stamp is required on mesne process.

The most important principle involved in this case, is that raised by the motion to quash both the original and alias summons, for want of convenient certainty in the description of the land in controversy; and the same question is raised on the motion to set aside the verdict for the same cause.    And as the verdict follows the description contained in the process, whatever may be said and considered in the one case, will equally apply to the other.    Chapter 134, section 1, of Code of 1860, requires the premises to be *described* in the summons of unlawful entry or detainer. And chapter 135, section 8, on ejectment, requires that the premises claimed shall be described with convenient certainty.    Here, then, one chapter requires the premises to

be *described*, and the other requires them to be described with *convenient certainty*. The different phraseology employed does not indicate greater certainty of description in the one case, than in the other: for, to describe a thing or place, and to describe it with convenient certainty, would seem to mean the same. The reason for description is apparent; and is as applicable in one case as in the other. The reason assigned in chapter 135, section 8, is that, "from such description, possession may be delivered." It is true that in chapter 134, no such reason is assigned: but it cannot be questioned that it equally exists, since the possession is in like manner to be delivered, and the description is the only safe guide to the officer in making it. But section 8, of chapter 135, has received interpretation by the court of appeals of Virginia in the case of *Hitchcox* vs. *Rawson*, 14 Grat. 526: tried by the ruling in that case, and the views above stated, the description of the premises in the original and in the alias summons', and also in the verdict, was not sufficiently certain to put the defendant to a denial of the complaint, nor to furnish a safe guide to the officer in delivering possession. And for that cause also both writs ought to have been quashed, and the verdict set aside.

The last objection is that the verdict is not responsive to the issues, in failing, as the plaintiff alleges, to find that the defendant in the court below, unlawfully withheld the premises in question at the time of the institution of the suit. This objection is not well taken, because the verdict is substantially a general verdict for the plaintiff below. And a general verdict, in effect, finds every essential fact necessary to authorize it, and withholding the possession at the date of the institution of the suit, is one of those facts; *Olniger* vs. *Shepherd*, 12 Grat., and *Kincheloe* vs. *Tracewells*, 11 Grat., 587.

Judgment reversed with costs to the plaintiff, in this court and the court below.