# CHARLESTON.

8
e65

308
634

## SUPERVISORS *v.* ELLISON.

### March 1, 1875.

1875.
January Term.

1. A party claiming a town lot, under an executory contract, can not maintain an action or proceeding of unlawful entry and detainer under the two hundred and eleventh section of chapter fifty of the Code against his vendor or his alienee, who has the legal title, where the entry was without force, and made under claim of right to the possession, and where such party was not in the actual possession of the lot when the entry was made

2. A summons against a defendant "to appear before a justice at his office in the township of Town, at Raleigh Court House, in the said county, on the 25th day of March, 1871, to answer the complaint of the Board of Supervisors of Raleigh county, in a civil action, for unlawfully entering and withholding from the plaintiff a certain town lot known as the Spring Lot, immediately in front of the Court House, marked on the town plat R., enclosed by a plank fence, supposed to contain —— acre" under the two hundred and eleventh and two hundred and twelfth sections of chapter fifty of the Code is substantially defective in not describing the lot with convenient certainty—It fails to state the town or county in which the lot lies.

3. In the action of unlawful entry and detainer prosecuted under the two hundred and eleventh, two hundred and twelfth, two hundred and thirteenth, two hundred and fourteenth, two hundred and fifteenth, two hundred and sixteenth, two hundred and seventh and two hundred and eighteenth sections of said chapter fifty it is proper that some answer or plea be entered or filed by the defendant if he appear and make defence. And if the justice renders judgment in favor of the plaintiff in such action and the defendant appeals to the circuit court, if no answer or plea appears by the record to have been entered or filed before the justice or in the circuit court, it is error to swear the jury "to try the matter in difference between the parties."

4. The proper plea for the defendant to file in such case is, ordinarily, "not guilty," and the proper oath to administer to the jury is that prescribed by said two hundred and fourteenth section of said chapter fifty of the Code.

5. Where the summons is substantially defective, in such case, as to the description of the lot, the circuit court may quash it.

6. If a lot on which there is a spring of water, in the plan of a town, be reserved for public use by the founder of the town, who owned the land on which the town is laid out, such reservation, though it may amount to a dedication of the lot for the public use, by the owner, does not vest the legal title thereto in the county or supervisors of the county, or necessarily vest the county or supervisors thereof with the equitable right to demand a conveyance from such owner or his alienee to the county or the supervisors thereof.

Appeal, by Mathew Ellison, from a judgment of the circuit court of Raleigh county, against him, in a proceeding instituted on behalf and in the name of the Board of Supervisors of said county.

The opinion of the Court contains a statement of the case.

The Hon. Henry L. Gillaspie presided at the trial below.

*James H. Nash*, for the appellant.

*Martin H. Holt*, for the appellee.

HAYMOND, PRESIDENT:

This cause was commenced before a justice in the county of Raleigh on the 22d day of March, 1871, under section two hundred and eleven of chapter fifty of the Code. The summons issued by the justice commands, in the name of the State, that Mathew Ellison (defendant) be summoned to appear before the justice at his "office in the township of Town, at Raleigh Court House in the said county, on the 25th day of March, 1871, at 10 o'clock A. M., to answer the complaint of the Board of Supervisors of Raleigh county, in a civil action for unlawfully entering and withholding from the plaintiff a

certain town lot known as the Spring Lot, immediately in front of the Court House, marked on the town plat R. enclosed by a plank fence, supposed to contain —— acre, in which action the plaintiff claims damages to the amount of $25." On the 25th day of March, 1871, the plaintiff and defendant appeared before the justice by their attorneys, and the cause was continued until the 1st day of April, 1871, at which time the parties again appeared before the justice, and the defendant requiring a jury of six men, a jury composed of that number of men was summoned and duly sworn well and truly to try whether the defendant unlawfully withholds the premises in controversy from the plaintiff and to assess the plaintiff's damages for being so kept out of the possession as provided by the two hundred and fourteenth section of said chapter.

The jury found this verdict, viz: "We the jury find that the defendant Mathew Ellison, unlawfully withholds the premises in controversy, to-wit: a certain town lot known as the Public Spring Lot, immediately in front of the Court House of Raleigh county, from the plaintiff." Upon this verdict the justice rendered judgment in favor of plaintiff against defendant on the 1st day of April, 1871.

Afterwards, on the 10th day of April, 1871, the defendant appealed from the judgment of the justice to the circuit court of said county. The appeal was docketed in the circuit court and on the 27th day of April, 1871; the parties appeared before the circuit court, by their attorneys, and the defendant moved the court to dismiss the summons upon the ground that the Board of Supervisors had made no order directing the suit to be brought which motion was overruled.

Afterwards, on the 22nd day of July, 1871, the parties again appeared before the court, and a jury came and were sworn "to try the matter in difference between the parties," and the jury, after hearing the evidence, rendered their verdict in these words, viz: "We, the jury,

find for the plaintiff." The plaintiff waived damages, and the court rendered judgment, "that the plaintiff recover of the defendant possession of the lot in the plaintiff's warrant mentioned, and also rendered judgment against the defendant and his sureties in the appeal for costs, &c."

After the jury rendered their verdict and before judgment, the defendant moved the court to set aside the verdict and grant a new trial; but the court overruled the motion, to which action of the court in overruling said motion the defendant excepted, and his bill of exceptions, duly signed by the judge of the court, is a part of the record. By the bill of exceptions it appears that on the trial of the cause, the plaintiff proved that the premises in question was a lot laid down on the town plat of Beckley, the seat of justice of Raleigh county, and numbered twenty-eight; that the plat was made and furnished by Alfred Beckley, then the owner of all the land at and around said county seat; that said Beckley, by an instrument of donation to said county, conveyed to said county certain lots other than the lot in question; that said lot in question was marked on said plat with the letter "R," with the words *pro bono publico*, written thereon; that the county, some time previous to the late war, built a fence around said lot, and improved a spring thereon; that it was used by the public up to the beginning of the war, and that the county claimed it from 1850 or 1851, and continually afterwards. It was further in proof that during the late war the fence around said lot was destroyed, and that it was thrown out waste; that the defendant, in the year 1867, inclosed said lot with other lots with a fence, but did not set up any claim of title to it; that some time about the year 1868 there was some contention between the citizens of the town and the defendant concerning the water privilege of said lot; also concerning the fence of defendant's around the lot. The plaintiff also gave in evidence an order made by plaintiff, in these words, viz: "At a meeting of the Board of

Supervisors for the county of Raleigh, held at the Court House thereof, on the 20th day of March, 1868, Ordered, That the fence around the Public Spring belonging to the county, be taken away so as to leave the Spring open to the public." And the plaintiff, for the purpose of showing the character of the defendant's possession, asked a witness if the plaintiff had, at any time thereafter, at the defendant's request, made an order giving him permission to let his fence remain around said lot; to which question and the answer thereto the defendant, by his counsel, objected, upon the ground that such order could only be proven by the record; but the court, relying upon the decision of the King's Bench, in the case of *Dyson v. Wood,* 3 B. & C., 449, cited in 1 Green. on Ev. section 513, page 623, ruled that such order, if made, would be good, although through accident or negligence the Board had omitted to enter it on the record. And thereupon plaintiff introduced a book and proved it to be the record of the Board of Supervisors of Raleigh county, wherein such order, if made, ought to have been entered, and plaintiff also proved that upon diligent search of said record no such order could be found therein. And the court being of opinion, further, that the absence of such order in said record was a sufficient foundation for the introduction of secondary evidence, overruled the defendant's objection, and permitted the witness to testify; and thereupon the witness stated that the said Board, in presence of witness, and at the request of defendant, before defendant planted trees and ploughed the lot, as hereinafter shown, (it was further in proof, that Alfred Beckley, the defendant's vendor, conveyed to him the lot in suit by deed bearing date in April, 1870, and that immediately after the conveyance by said Beckley, the defendant planted out some trees on the lot and posted a notice forbidding persons from trespassing on the lot in controversy,) had made an order permitting the defendant to suffer his fence to remain around said lot; and it was also proven that defendant said he

had obtained permission of the Board to let his fence remain around said lot." And the plaintiff in further proof, introduced an order of the plaintiff in these words, viz: "At a meeting of the Board of Supervisors, for the county of Raleigh, held at the Court House thereof, on the 28th day of May, 1868, Ordered, That provision be made to fence the Public Spring, and on completion of same General Beckley agrees to deed the same to the county. Joseph Hannah, E. Prince, John Beckley and John Rodgers carry out the same." Also another order of plaintiff in these words, viz: "At a meeting of the Board of Supervisors for the county of Raleigh, at the Court House thereof, on the 4th day of April, 1870, Ordered, That the town lot number twenty-eight, known as the Public Spring Lot, reserved in town plat for the good of the public, be managed as heretofore by the public, the same being disputed by General Beckley, which dispute and difference being argued by James H. McGinnis for said Beckley, and by J. S. Thompson *et al.* for the public; the ownership of said lot was declared by the Board of Supervisors to be in the people of Raleigh county; it is therefore ordered that Edwin Prince, Joseph B. Underwood, and Joseph Hannah be and are hereby appointed a committee to execute an order made in the year 1868, for the fencing of said lot."

It was further proved that the Board of Supervisors, sometime in the spring of 1871, removed the defendant's fence, against his remonstrance, and built a new fence around the lot in question; shortly after which the defendant ploughed said lot, and thereupon the plaintiff instituted this suit.

Thereupon the defendant proved that in 1865 he found the lot in question without any fence around it; that sometime in 1867, he fenced the same, with other lots, and that he cut and used the hay produced by said lot for three years before the institution of this suit; that he pastured his stock to the exclusion of others during

40

said time, but that during the whole time the public used water from the public spring on the lot, and that they used it up to the institution of this suit, and that they had used the same since the institution of this suit. This, the bill of exceptions states, was all the evidence given in the cause.

From the judgment of the circuit court rendered in this cause the defendant appealed and perfected his appeal to the Supreme Court of Appeals in .1871, and it now becomes the duty of this Court to pass upon it.

The plaintiff has asked this Court to dismiss the appeal for want of jurisdiction. But it appears from the record in this case that the title to the lot of land was involved in the controversy before the circuit court and that being so this Court has jurisdiction to review and consider the proceedings of the circuit court in the cause on this appeal. There is no provision in the Constitution of 1863, or the legislation thereunder making, the judgment of a circuit court, on appeal from the judgment of a justice, final, in a cause like this ; nor in the Constitution of 1872. The first section of chapter one hundred and thirty-five of the Code of 1868 provides that a "party to a controversy in any circuit court may appeal to the Supreme Court of Appeals from a judgment, decree or order therein in the following cases: *First,* From a final judgment or decree concerning the title or boundaries of land." The eighth section of the fifth article of the Constitution of 1863 provides expressly that the Supreme Court of Appeals shall have appellate jurisdiction "in controversies concerning the title or boundaries of land." See also case of *Gorman v. Steed,* 1 W. Va., 1. The circuit court seems to have tried the cause in some important respects upon the same principles as if the cause had been commenced in that court under chapter eighty-nine of the Code.

The plaintiff proved that the legal title to the lot in question as well as all the adjacent land was vested in

Alfred Beckley and that the legal title to the lot in question passed from said Beckley to the defendant in April, 1870, and it clearly appears that defendant was in possession of the lot before and after it was conveyed to him by Beckley and that from the time he obtained the deed till the institution of this proceeding he continued in the possession of the same. The plaintiff seems to claim the lot by virtue of an alleged executory contract between Beckley and the county of Raleigh, or the plaintiff acting for the county, or because Beckley had dedicated said lot, which is in the town of Beckley, to the public, at the time the town was laid out and lots therein sold and conveyed by him. I do not think the facts proven establish an executory contract between the county of Raleigh or the plaintiff that the lot was or should be conveyed by Beckley to the county. It certainly does not prove a purchase by the county. If the evidence and facts proven in the case tend to establish any fact it is that the lot was never sold or intended to be sold by Beckley, but that it was reserved from sale and to be left and kept open and accessible for the use of the public, lot owners and residents of the town. It was not sold or dedicated, so far as now appears, to the county in contradistinction to the public, or the lot owners and residents of the town, or others. The lots which Beckley dedicated to the county, it is shown by the plaintiff, he conveyed to the county. But if the plaintiff had shown an executory contract between between Beckley and the county for the conveyance of the lot to the county, still the plaintiff could not maintain this proceeding of unlawful entry under the evidence and facts proven against the defendant. In the case of *Yancey v. Mauck,* 15 Gratt. 306, Allen, Judge, in delivering the opinion of the court, says: "As between the vendor and vendee the latter occupies the position of a tenant at sufferance to the former. The vendor may assert his legal title and recover possession of the premises by ejectment, and so disaffirm the executo-

ry agreement to sell; or if he elects to go into chancery, the proceeding is more correctly a bill for the specific execution of the contract by requiring the vendee to complete his purchase by paying the price, or otherwise have the subject sold at his risk, than a bill to subject the property to a mere equitable lien." From this it would seem that at law the vendor who has the legal title is regarded as the owner of the land, but perhaps otherwise in equity. In the case of *Hawkins v. Wilson*, 1 W. Va. 117, it was decided and held that "a vendee in an executory contract for the sale of land cannot maintain an action of unlawful detainor against the vendor for the possession of the premises."

In that case the condition to the title bond expressly provides that the vendee is to have possession of what he wants to seed, and have possession of the house the 1st of November, after the date thereof. The vendee brought his action after the time elapsed, and still it was held in that case, upon the principles held and stated in Allen, J.'s, opinion aforesaid, that the vendee could not maintain his action of unlawful detainer against his vendor for the possession of the land. The twentieth section of chapter ninety of the Code allows a vendee in possession to make an equitable defense against his vendor, or persons claiming under him, by providing that " a vendor, or any person claiming under him, shall not, at law, recover against a vendee, or those claiming under him, lands sold by such vendor to such vendee where there is a writing stating the purchase and the terms thereof, signed by the vendor or his agent." But this section is inapplicable to the plaintiffs' case as made out in this record. Lomax's Digest, vol. 2, p. 42, was relied on by plaintiffs' counsel to support the plaintiffs' right to maintain this suit and to recover against the defendant. I have examined the authority cited, and find that it does not support the pretensions of plaintiff in this respect. What Mr. Lomax says is based upon a decision of the court of appeals of Virginia in the case of *Boykin v.*

*Smith,* 3 Munf. 102. And it will be found that that was a bill in chancery to enforce the specific execution of a contract, and to obtain the legal title and possession of the land, which was the subject of the contract. It was admitted in that case that the vendee did not, by virtue of the release entered of record by the clerk, by direction of the vendor, obtain the legal title, but that, under the circumstances of that case as stated in the opinion of the court, there was an executory contract for the conveyance of the land for a sufficient consideration, and that in a court of equity the vendee was entitled to a specific execution of that contract, to have possession of the land and the legal title thereto. That was a peculiar case, and the contract and all the material facts alleged in the bill were admitted by the defendants in their answer; but they relied upon the statute of frauds, &c. This case, instead of being in support of plaintiff's pretensions, is in fact against them. No bill of exceptions was taken by the defendant to the action of the court admitting parol evidence to prove that the Board of Supervisors made an order that was not entered of record, and the contents of that order. It is true it is stated in the bill of exceptions taken to the opinion of the court, in refusing to grant a new trial, that the evidence was offered and objected to by defendant's counsel, and the court overruled the objection and the evidence was given. But I deem it immaterial and unnecessary to decide the question as to whether the court erred in admitting said parol evidence under the views I have expressed, because it is clear that, even admitting all the evidence given, the plaintiff cannot maintain this action under the law. The one hundred and sixty-ninth section of chapter fifty of the Code provides, among other things, in relation to trials of appeals from the judgment of a justice, that the same shall be determined without reference to the judgment of the justice. The two hundred and eighteenth section of same chapter provides that appeals from the judgment of a justice, in cases of unlawful entry, shall

lie to the circuit court, upon the same terms, within the same time, and subject to the same regulations as in other cases. But it seems to me that cases on appeal should be tried in the circuit court upon pleadings of some description filed by the parties. An issue should be made in the circuit court if not already sufficiently done in the magistrate's court. I think this is clearly contemplated by the one hundred and sixty-ninth section of said chapter fifty. In this case no answer or plea of any kind seems to have been filed by the plaintiff before the justice; nor does it appear that any plea was filed in the circuit court. When the jury was sworn there was no pleading in the cause except the original summons. The jury were sworn to try the matter in difference between the parties. What was the matter in difference between the parties? So far as I can see there was no *issue* made up showing the matter in difference. If an issue had been made up, showing the matter in difference, then, perhaps, in ordinary cases of appeal, the oath administered to the jury might have been sufficient. It is true the said one hundred and sixty-ninth section does not prescribe the oath to be taken by a jury impanelled to try an appeal. But I am unable to see why the oath of the jury in such cases may not ordinarily be the same as that in other cases of like nature originally brought in the circuit court. It seems to me the proper oath was not administered to the jury in this case, and that on the pleadings being made up on the plea of not guilty filed by the defendant, the proper oath to be administered to the jury is the oath prescribed by the two hundred and fourteenth section of said chapter fifty.

The description of the lot of land in the summons mentioned is not sufficient. The summons although it specifies a town lot, does not state in what town or county it lies. The verdict of the jury upon which the circuit court rendered judgment does not in any respect aid the defective description of the lot contained in the summons. The verdict is "we the jury find for the plain-

tiff." If the jury had in their verdict described the land with convenient certainty, such description, after verdict, might have cured the defective description in the summons. In the case of *Gorman v. Steed*, 1 W. Va. 1, it was *held* that "land described as a certain tract or parcel of land lying and being in the county of Ritchie, near German's Tunnel and containing about ten acres is insufficiently specified in an action of unlawful detainer." In this case it was *held*, and I think properly, that the land should have been described with convenient certainty, so that, from the description, possession may be given, The judgment in this cause is according to the summons—it is for the land described in the summons. And the summons being substantially defective in the description of the lot and not in any way aided by the verdict, I think the court should not have rendered judgment on the verdict but should have set it aside and quashed the summons because of insufficient description of the premises. See *Gorman v. Steed*, before referred to, 1 W. Va., 15.

1875.
January Term.

Supervisors
v.
Ellison.

For the foregoing reasons the judgment of the circuit court of Raleigh county rendered in this cause on the 26th day of July, 1871, must be reversed and annulled and the verdict of the jury rendered in the cause be set aside with costs to the appellant. And this Court proceeding to render such judgment as the said circuit court ought to have rendered, it is considered that the judgment rendered in the cause by the justice, be reversed and annulled and that the original summons issued in the cause be quashed because it does not contain a sufficiently certain description of the town lot therein mentioned. And that the defendant recover of the plaintiff his costs before the circuit court and the justice in this cause expended.

The other Judges concurred.

JUDGMENT REVERSED, VERDICT SET ASIDE AND ORIGINAL SUMMONS QUASHED.