Daniel, J.
 

 This was an action of debt commenced in the County Court of Macon, on a bond given to Montford Stokes, Governor of the State of North Carolina and his successors in office, and executed by Welch, Poindexter, Parsons, Enloe, Brittain, Morris and Truitt. It was for money borrowed from the State, under the provisions of an act of Assembly. The plaintiff issued,a writ of
 
 capias ad respondendum
 
 against Welch, Parsons, Brittain, Morris and Truitt, and a summons against the representatives of Enloe and Poindexter, these tw.o obligors having died since the execution of the bond. The
 
 capias
 
 was by the shei-iff executed on Welch, Brittain and Morris, and as to Parsons and Truitt returned “not found.” The process was run out to a
 
 pluries
 
 as to Parsons ; but there was neither an
 
 alias
 
 nor a
 
 pluries
 
 as to Truitt; nor any
 
 alias
 
 or
 
 pluries
 
 as to Poindexter’s representatives. The defendants, Welch, Brit-tain and Morris received a declaration against themselves, and pleaded “ General issue and conditions performed.” At January Sessions, 1840, the plaintiff was non-suited, and appealed to the Superior Court. At Spring Term, 1842, of the Superior Court, the cause was submitted to a jury, and, before they rendered a verdict, the defendant’s counsel moved the court to adjudge that the whole cause had been dis
 
 *253
 
 continued, because the process had not been run out to a
 
 pluries,
 
 as to some of the persons mentioned in the original writ, to wit, Truitt and Poindexter’s representatives. At the same time the plaintiff’s counsel moved the court for leave to enter a
 
 nolle prosequi
 
 as to those persons. The court reserved these questions and the trial proceeded. The.defendants insisted on the trial that the action could not be maintained, as there was no proof that the Legislature had elected to take back the money, rather than its equivalent in the stock of the Turnpike Road, which privilege had been reserved in the said act, if the Legislature should think proper to take the stock in payment; nor had the legislature directed a suit to be brought on this bond. These objections were overruled by the court; and we think the court was correct in so doing. There is no stipulation in the condition of the bond, that the State will take such stock in discharge of the bond. Nor is there any law to stay pro-, ceedings on the bond, until the Legislature should order it to be put in suit. If the Legislature has passed any resolution on the subject, it was the duty of the defendants to she® it. The defendants again contended that the action could not be maintained in the name of Dudley, but that it should have been brought in the name of Stokes. They said that a bond given to a sole corporation aud its successors, did not, in law, go to the successor, but would go to the executor of the first obligee — that bonds given to corporations sole, as bishops, prebendaries, parsons, vicars, &c. would enure to them in their natural capacity, as they cannot take a chattel or
 
 chose in action
 
 in succession, unless by custom ; and for this were cited Bac. Ab. Obligation, D. 2.
 
 Byrd v Wilford,
 
 Cro. Eliz. 464.
 
 Fulwood’s case,
 
 4 Co. 65. The answer is, that the rule relied upon does not apply to the King. He may take a chattel or
 
 chose in action
 
 to go in succession — the revenue, national ships and all the materials of war, which are things personal in their nature, go in succession. Specialties and obligations taken to the use of the King will go in the same way. We have no modern authority on this point, because, by the Stat. 33 Herr.
 

 
 *254
 
 ^ *s enacted> ^at all-obligations and specialties, taken to the use of the King, shall be of the same nature as a
 
 statute staple.
 
 They are now as records, and the usual remedy tor a breach is by
 
 scire facias.
 
 Williams on Ex’ors 653. Bingham on Executions, 228, 229, It appears from the face of this bond that the money belongs to the State ; and the act directs that the bond shall be payable to the Govern- or for the time being. We are of opinion that the plaintiff, who was the successor of Stokes as Governor, may maintain an action on the bond. The jury rendered a verdict for the plaintiff. And the court then returned to the point reserved ; and was of opinion, that the cause had, in law, been theretofore discontinued and gave judgment accordingly, from which the plaintiff appealed to this court. It may be, that an order of dicontinuance might have been proper at the time the motion was made, had not the plaintiff simultaneously moved to enter a
 
 nolle prosequi
 
 as to those persons named in' the original writ, who had not been taken. It is true, that, in England, if two persons are sued in a bailable action
 
 ex contractu
 
 or
 
 ex
 
 delicto, and but one be taken, the plaintiff cannot, without error, serve him with a declaration, until he has run the process to an outlawry against the other. 1 Stra. 473. 2 W. Blac. 759. 2 New. Rep. 404, 231, 433. 1 Wils. 242. 1 Mau. & Sel. 55. 1 Arch. Pr. 123, 124. If he declare against one only where two are named in the writ, the other may, if the writ be bailable, immediately sign judgment of
 
 nonpros.
 
 2 Term R. 257. After proceeding to outlawry against the other, you may declare against the one, who has appeared alone, stating the outlawry of the other in the commencement of your declaration. 15 East. 1, 4. Taunt. 299. 1 Maule & Sel. 242. 2 Arch. Pr. 179. By accepting a declaration and going to trial, and a verdict rendered, still at common law the error was'not cured, but it is now cured by the statute of Jeofails 32, H. 8, c. 30, which is.comprehended in our Revised Statutes, c. 3. s. 5. The idea of the Judge was not correct, that the action had been, by force of law, theretofore discontinued, and that a
 
 nolle prosequi
 
 by the plaintiff, at .the time moved for,
 
 *255
 
 could not help him. For if the verdict, which the jury were then impannelled to give, had been rendered before the king of the motion for the discontinuance, the above mentioned statute of Jeofails would have cured the defect, and the plaintiff would then have been entitled to a judgment against those, who had been arrested and served with a declaration. The cause was, therefore, as to them, still in court, until the order of discontinuance was entered by the court. In England, in actions upon contracts against several defendants, if the defendants join in their pleas, the plaintiff cannot enter a
 
 nolle prosequi
 
 as to any one of them, without releasing the others. 1 Wils. 90. 1 Saunders 297, (note.) In actions
 
 ex delicto
 
 the plaintiff may enter a
 
 nolle prosequi
 
 as to some of the defendants, and proceed against the others, at any time before final judgment, even although they all join in the same plea and be found jointly guilty. 1 Lord Ray. 597. 1 Wils. 306. 2 Salk. 455, 466. 3 Salk. 244, 245. Arch. Pr. 249. The reason why in England a
 
 nolle prossequi
 
 cannot be entered as to one or more of the defendants who are sued upon contract, is, that it is a rule there in such actions, that the plaintiff must recover against all or none. That is not the rule with us, for here a plaintiff may recover against one or more, in an action upon contract. Therefore the practice here has long been,-to permit the plaintiff to enter a
 
 nolle prosequi
 
 in actions upon contract, just as he is permitted to do in actions
 
 ex delicto,
 
 at any time before final judgment. In this case the record states, that leave was given to the plaintiff to enter a
 
 nolle prosequi
 
 as to the- defendant's not taken. This was rightr and, consequently, the order for discontinuing the cause was-erroneous and must be reversed r and judgmuent must bn rendered for the plaintiff upon the verdict-..
 

 Per Curiam. Judgment of the court below'reversed, and judgment for the plaintiff.