# CHARLESTON.

UNITED STATES BLOWPIPE CO. v. SPENCER et al.

Submitted January 16, 1899—Decided April 22, 1899.

1. JUDGMENT—*Service of Process—Writ of Error—Appeal.*

   A judgment or decree of this Court upon a writ of error or appeal is conclusive, as to all matters involved in it, upon all parties served with process in it, even though the service of process to answer in the court below were voidable.   (p. 591.)

2. PROCESS—*Power of Courts.*

   A court has inherent power, in addition to powers specifically given by statute, to award further process to bring parties before it to answer its judgment.   (p. 594).

3. ACTION—*When Actions Begin—Summons—Mechanic's Lien.*

   An action at law or suit in equity dates from the date of the summons, not from its service; and therefore a suit to enforce a mechanic's lien, in which the summons issued, but was not served, within six months from recordation of the lien, is not barred by that limitation.   (p. 593).

4. DEED—*Description.*

   A deed, for a description of the land, may refer to another deed or map, and the deed or map is considered as incorporated in the deed itself for description of the land.   (p. 590).

5. PROCESS—*Service of Process—Corporations—Attorney.*

   Service of process upon the president of a defendant corporation, who is attorney for the plaintiff in the suit, is not void, but voidable upon proper exception thereto.   (p. 593.)

Appeal from Circuit Court, Mason County.

Suit by the United States Blowpipe Company against J. S. Spencer and others.   Decree for Defendants, and plaintiff appeals.

*Reversed.*

RANKIN WILEY, JR., for appellant.

C. E. HOGG, J. S. SPENCER, W. R. GUNN, JAMES B. MENAGER, GEORGE PRICE, and W. MOLLOHAN, for appellees.

Brannon, Judge:

A former decision of this Court in this case will be found in 40 W. Va. 698, (21 S. E. 769), where full facts will be found. I refer to Judge English's opinion, also, as fully stating the facts. After the case went back to the circuit counrt from this Court, the Point Pleasant Furniture Company made the objection that in fact the demurrer passed upon by this Court, which the circuit court record recited as having been joined in by said furniture company, was not its demurrer, and that it had been, by mistake or wrong, filed in its name. It also pleaded that it never had been served with process, claiming that service upon Wiley as its attorney was void, because Wiley was also attorney for the Blowpipe Company, an adversary to its interests. The Court corrected the record by striking the demurrer out as to said furniture company, and held the service of the summons upon it as void. By striking out said demurrer, it reopened for litigation the questions settled by this Court upon the demurrer in its former decision, and, by holding the service of process upon the furniture company void, it left the process unserved as to the furniture company; and, on the theory that a suit is not commenced until service of process, more than six months had elapsed since the filing of the mechanic's lien before suit brought, and thus relief to the plaintiff was barred. It wholly dismissed the bill, and the plaintiff, the Blowpipe Company, and the Carving-machine Company appealed.

I hold that this action of the circuit court in striking out the demurrer and service of process upon the furniture company is erroneous,—clearly so; for the circuit court record asserted that the furniture company joined others in a demurrer, and, though that demurrer was not signed by it, the court held it a demurrer on the first hearing, and, though the opinion of this Court does not, in referring to that demurrer, include the furniture company expressly as a demurrant, it does not expressly exempt it from responsibility for that demurrer; and hence we must say that, when this Court passed upon the record of the circuit court, it, in law, should be held as acting upon the demurrer, in legal contemplation, as if the furniture company were a party thereto, thus binding that company to every-

thing that was decided by this court on the former appeal. Now, on general principles, a decree of a circuit court or of this Court is *res judicata* upon all questions of law and fact comprehended in the record of the decision. They cannot be litigated over again. *McCoy* v. *McCoy*, 29 W. Va. 794 (2 S. E. 809). When this Court has decided a case, and the principles of law arising therein, it is not open to any bill of review, but is a finality. *Henry v. Davis*, 13 W. Va. 230. And a decision of this Court binds every party, appellant or appellee, as to whatever is decided by it, whether served with process in the appeal or not. It seems hard to bind a party to an adjudication in this Court where he was not served with process, but *Newman* v. *Mollohan*, 10 W. Va. 488, goes that far. This has been since approved in this Court. *Renick* v. *Ludington*, 20 W. Va. 537, and *Ferguson* v. *Millender*, 32 W. Va. 32, (9 S. E. 38.) But in this case the furniture company, by an attorney of indisputable authority, accepted service of process in the former appeal, appeared in this Court, argued the case, asked for and obtained a rehearing of the former decision, made no objection to service of process prior to the circuit court decree, said nothing against its demurrer, but claimed the benefit of it here; and now to allow it to ignore all this action, and frustrate the former decision of this Court upon the matters before it, would seem to me to be "marching up the hill only to march down again," and yield everything to technicality, and take from the creditors of the furniture company the fixed interest which they have under the former solemn decision of this Court. This we cannot allow it to do. It cannot reopen the questions put to rest by the former decision. This Court decided the principles of the case upon that demurrer and service of process. It decided that the blowpipe company had a valid mechanic's lien upon the property of the furniture company, and that its suit had been brought within the six months, and we hold those questions as finally adjudicated, as between the blowpipe company and the furniture company,—beyond recall. This Court, after deciding the bill good and brought in time, and the mechanic's lien good, by overruling the demurrer did not send the case back to be dismissed on any idea that process was void, and the demurrer and appearance null, but to be further proceeded with on the basis that it was

a suit in time, and on appearance to it, and on a valid mechanic's lien. The circuit court could not go behind all this action of this Court. And just here I want to say that I do not claim that service of process on, or appearance by, a person who is attorney in adverse interest to the defendant, is good; I do not claim this, but I think such service and appearance not absolutely void, but voidable on motion in time; and, whether I am right as to this or not, I am firmer yet in the opinion that, as no objection was made on that ground on the former appeal, such service and appearance can be now treated as neither void nor voidable.

The point is made that this suit was barred because not brought within six months, on the theory that service was not within that time. I doubt the correctness of *Stone v. Tyree*, 30 W. Va. 687, (5 S. E. 878), in its holding that *lis pendens* dates from the service of subpoena only. In an action at law the suit dates from the writ issued. *Newman v. Chapman*, 2 Rand. (Va.) 93. Authorities there shown date it, in a chancery suit, from service. This ruling is based on the English chancery practice, from the fact that never till bill filed did writ issue, and the mere filing of a bill before writ was no suit; but now our Code (chapter 124, section 5 )says that "process to commence a suit shall be a writ;" applying to both chancery and actions at law. A suit exists at its date. *Lambert v. Manufacturing Co.*, 42 W. Va. 813, (26 S. E. 431.) And I must assert that, upon a review of authorities, the issuance of the writ, generally speaking, is the beginning of the suit, if no statute controls. *Jackson v. Hull*, 21 W. Va. 601. There should be no difference, under our statute, between law and chancery, as to this. I refer to JUDGE ENGLISH's opinion as a fair discussion on this subject. I only advert to it here because it arises in the case, and is a matter of great interest in practice; but really I need not discuss it, because it lies behind our former decision. That settled that the suit was in time. I can by no means agree with JUDGE ENGLISH or the circuit court in dismissing the suit outright. Let us suppose that the court had properly struck out the service of process on the furniture company on its demurrer. What then? Should it have dismissed the case? It could not on the idea that the writ was not issued within six months, for it was. It must then dismiss the suit on some theory

that there has been a hiatus in the proceedings, or, rather, as JUDGE ENGLISH would say, on the theory that there could be no further process, because the statute only provided for *alias* process in cases where the original is not returned executed, whereas in this case it was returned executed. It seems very strange to me that in one breath it is said that the service is void, and in the next that still no *alias* can issue. Why, if the return be void and empty, does it not leave the process without return? And, if without return, Code, chapter 124, section 3, says that an *alias* may issue. The service is null, and yet it has the same effect as the valid service has to prevent *alias* summons. This cannot be. If that service were held void, it should be treated as no service, and further process awarded in court, or the case sent to rules, in order that it might issue, instead of dismissing the bill and destroying the rights of the plaintiff therein. I do not care whether that section of the code applies or not, but it does on the theory of the nullity of the return; and I assert that, outside of any statute, a court has, under its common-law powers, the right to take any steps by further process to bring the parties before it. The statute is not the full measure of the power. Its provisions are simply cumulative to its common-law powers. It was entirely erroneous to dismiss the bill, even if the court had had the power to strike out the return and demurrer, as in that case it should have remanded the bill to rules, to have further process served upon the furniture company.

ON REHEARING.

Re-argument has not changed my opinion. I should have more plainly said in the above opinion that the furniture company is not only precluded from raising the question of the validity of the lien of the blowpipe company by the sheer force of our former decision, taken alone, *per se* but it cannot now say there was no demurrer or appearance, for by appearing in the former appeal and relying upon that demurrer, it ratified and confirmed that demurrer as though filed by the proper attorney. It sought the benefit of that demurrer on the former appeal, and never, until defeated, did it repudiate that demurrer. It will not do to ask us now how the furniture company could have taken advantage of said demurrer—not being its demurrer—on

the former appeal. If available at all, there was some process, under the head of showing want of jurisdiction of the person in the lower court, or in some way; but no such objection was made, and the furniture company went on in this Court just as if it had no objection whatever to the demurrer. Most of the cases cited to show that service on the president of the furniture company is bad, because he is one of the attorneys of the blowpipe company, are cases where the plaintiff himself was the one served as the officer of the defendant company, whereas in this case he was only attorney. The case of *George v. Ginning Co.* (S. C.), (24 S. E. 41) is a case, where the attorney in fact of the plaintiff to prosecute the suit was the officer of the defendthe company served with process, and service on him was held bad; but note that the defendant, even before judgment, moved, for that cause, to quash the service, and, being refused, carried the case, on that very point, to the supreme court. Here such is not the case. The point was not sought to be used until after the decision of the former appeal. The former decision is final, and binding to establish the lien of the United States Blowpipe Company. It is not, however, final as to the claims of the Moore Carving Company, as they have not yet been passed on by the circuit court. Of course, the former decision has no effect as to the Page Belting Company, the Fairbanks Company, Mayer & Lowenstein, and the American Drier Company, as they were not parties till afterwards. The decree is reversed, and the case remanded for further proper proceedings, recognizing the lien of the blowpipe company, and enforcing it, and the lawful rights of other parties appearing entitled, against the fund in the hands of the receiver.

ENGLISH, JUDGE, *dissenting*.

I cannot concur in the opinion of the Court handed down in this case by JUDGE BRANNON, for the following reasons:

This was a bill filed by the United States Blowpipe Company in the circuit court of Mason County against J. S. Spencer and others, having for its object the enforcement of an alleged mechanic's lien. The bill was demurred to in said circuit court, the demurrer sustained, and an amended bill filed, which was also demurred to, and the de-

murrer sustained; and the plaintiff, declining to amend, obtained an appeal to this Court, which was decided, and the opinion handed down, on the 17th of April, 1895, in which, for reasons stated by HOLT, PRESIDENT, in the opinion aforesaid reported in 40 W. Va. 698, (21 S. E. 769), the decree complained of was reversed and remanded, a rehearing granted, and the same conclusion reached. On the 21st day of May, 1895, the cause was again heard upon the mandate from this Court, and upon the papers theretofore read therein, and a rule was awarded against all of the defendants requiring them to answer the bill within thirty days. On the 3d day of September, 1895, the defendants James P. Hayes and J. P. R. B. Smith, trustees, tendered their respective answers, which were ordered to be filed, and the plaintiff replied generally thereto. On the 11th day of February, 1896, several affidavits were presented and filed in support of a motion to correct an interlocutory decree entered in the case on the 19th day of September, 1893, so far as the same showed an appearance by demurrer by the defendant the Point Pleasant Furniture Company to to bill filed by plaintiff in this cause; and the court being satisfied that said decree was inadvertently entered, so far as the same recited that the Point Pleasant Furniture Company appeared by its attorneys and tendered and filed with the other defendants therein named its joint demurrer to plaintiff's bill of complaint, said decree was corrected by striking therefrom the name of the Point Pleasant Furniture Company, and, the court being satisfied from the affidavits filed that the said furniture company had in no manner appeared in this suit for any purpose, the said bill, as to it, was taken for confessed, which order was objected to by the plaintiff. The Moore Carving-Machine Company, the Page Belting Company, the Fairbanks Company, Mayer & Lowenstein, and the American Drier Company, all creditors of the Point Pleasant Furniture Company, filed their petitions asking to be made parties defendant to this suit, and they were accordingly made such defendants. The furniture company filed its special plea in writing claiming that it never had been served with process commencing this suit; that the process was served upon the attorney for the plaintiff, who at the same time was president of said furniture company, which company at that time had

an attorney of record duly appointed by it to accept service of process, upon whom process could have been served at the time of the institution of this suit, and at the time of the service of the summons upon the attorney for the plaintiff, who was president of said company,—and claiming that service of process upon said attorney for the plaintiff was illegal and void, and that said service and return should be quashed. The Page Belting Company, the American Drier Company, the Fairbanks Company, and Mayer & Lowenstein, creditors of said furniture company, holding liens on the money in controversy, filed separate pleas, in writing, to the same effect. On September 22, 1896, the plaintiff's attorneys tendered an answer for the defendant company, to the filing of which the American Drier Company, the Fairbanks Company, the Page Belting Company, and Mayer & Lowenstein objected and excepted. On February 16, 1897, John E. Beller, under the direction of one of the plaintiff's attorneys, tendered another answer for the furniture company, which answer so tendered was substantially the same as the one tendered by plaintiff's attorneys and rejected by the court, which answer was objected to by the same parties for the reasons assigned in the exception to the former answer tendered as aforesaid. The plaintiff took depositions in support of its claim, and on the 16th of February, 1897, a decree was rendered in the cause dismissing the plaintiff's bill, with costs, and the plaintiff obtained this appeal.

The first error assigned and relied on by the appellant is claimed to have been in permitting the affidavits to be filed, and in allowing the furniture company to wthdraw its demurrer after it had been passed upon by the Supreme Court of Appeals. In considering the question raised by this assignment of error, it is material to inquire whether the furniture company did file its demurrer to the plaintiff's bill. Said company certainly did not join in the demurrer to the original bill, for, by reference to said demurrer, it is perceived that said furniture company neither signed said demurrer by counsel, nor is its name mentioned in any portion of the demurrer. In the demurrer to the amended bill, however, the name of said furniture company is mentioned in the body of the demurrer, but its name is not signed to it,

by counsel or otherwise. The decree of December 19, 1893, contains this language: "This day came again the plaintiff, by its attorneys, and the defendants, Buss Machine Works, Lane & Bodley Company, the Laidlaw & Dunn Company, James P. Hayes, J. S. Spencer, Point Pleasant Furniture Company, and J. P. R. B. Smith, trustee, by their attorneys; and thereupon said defendants tendered and filed their joint and several demurrers to the plaintiff's amended bill," etc. This demurrer appears as part of the record in this cause, and does not appear to have been signed by the Point Pleasant Furniture Company or J. P. R. B. Smith, by counsel, while it does appear to have been signed by the other parties named therein by their counsel. The question whether the furniture company joined in said demurrer is rendered material by the fact that the president of said company, as counsel for the appellant, instituted this suit, and had process in the same served upon himself, as president of said company. This question was brought to the attention of the court by pleas filed by said furniture company, the Buss Machine Works, the Page Belting Company, and the Fairbanks Company, all of which pleas aver that the process in this case, as to said furniture company, was served upon Rankin Wiley, Jr., its president, who at the same time was the attorney for the plaintiff, which instituted this suit. The action of the circuit court in sustaining this plea, and holding that the service of the process commencing this suit upon Rankin Wiley, Jr., president, etc., one of the attorneys for the plaintiff, was void and of no effect, was made the ground of the second assignment of error relied on by the appellant.

Now, as to the first assignment of error, when we look to the record it is at once apparent that the demurrer to the amended bill was not signed by the Point Pleasant Furniture Company, either by counsel or by its president. The company appears to have been a corporation, and for that reason could not have appeared and demurred in person, and must have appeared by counsel, or its president, if the plea had been to the jurisdiction. So, in the case of *Quarrier* v. *Insurance Co.*, 10 W. Va. 518, GREEN, PRESIDENT, delivering the opinion of the court, says: "The first question to be decided is, did the court err in rejecting the plea to the jurisdiction? The first objection to this

plea urged is that the defendant should have appeared by attorney." In support of which he cites 1 Chit. Pl. (7th Eng. 16th Am. Ed.) 577, 588, who says, "A plea by a corporation aggregate, which is incapable of personal appearance, must purport to be by attorney;" also, *Osborn* v. *Bank*, 9 Wheat. 829, 830, in which Chief Justice Marshall says, "It is admitted that a corporation can only appear by attorney," and, again, "A corporation, it is true, can appear only by attorney, while a natural person may appear for himself." Judge Green in his opinion, further says: "If, then, a plea to the jurisdiction cannot be by attorney, and a corporation cannot appear but by attorney, the consequence would be that a corporation could not plead at all to the jurisdiction,—a result contrary to our sense of common justice. The solution of this difficulty is that while it is necessarily true that a corporation aggregate cannot appear in any case in *propria persona*, and cannot, in a plea to the jurisdiction, appear by attorney,—for in so doing it would admit the jurisdiction of the court,—it may in such case appear by its president, just as an infant, who could not appear in *propria persona* nor by attorney, must appear by guardian *ad litem*." Now, while it is true that the decree rendered in this cause on the 19th of December, 1893, contains the recital that the Point Pleasant Furniture Company came, with others therein named, by their attorneys, and filed their joint and several demurrer to the plaintiff's amended bill, etc., yet it is apparent that this is a misrecital, the demurrer filed not having been signed in any manner by said furniture company; and, that a demurrer is required to be signed, see Story, Eq. Pl. 448, section 461, where it is said: "In order to prevent delays by putting in frivolous demurrers, it is required by the rules that the demurrer should be signed by counsel;" citing Beames, Orders Ch. 172; Hinde, Ch. Prac. 148; Mitf. Eq. Pl. (by Jeremy) 208; Coop. Eq. Pl. 114, etc. It moreover appears, by affidavits filed, how this mistake and misrecital occurred; the name of the said furniture company having been interlined, after said joint demurrer had been prepared, by counsel for the Buss Machine Works, which interlineation was made in the order filing said demurrer, by the same attorney, at the instance of counsel for plaintiff; said attorney having no authority whatever to appear for said com-

pany. Thus, it is made to appear that said company did not appear by attorney. Prof. Minor, in the first volume of his Institutes (page 570), under the head of "Disabilities of Corporations," says: "The disabilities of corporations are thus summed up, not with entire accuracy, by Sir William Blackstone (1 Bl. Comm. 476, 477): (1) 'It must appear by attorney, for it cannot appear in person; being, as Sir Edward Coke says, invisible, and existing only in intendment and consideration of law."

Now, although there are several parties defendant to this suit, it is indispensible that the Point Pleasant Furniture Company should have been before the court, for the reason that is is the property of that company against which the mechanic's lien was asserted, and from which the various liens claimed by different parties in the suit were seeking satisfaction. In order that the validity of the mechanic's lien asserted in the plaintiff's bill should be passed upon and enforced by the circuit court, it was necessary either that process should have been served upon said company, or that it should have appeared gratis; yet it does not seem to have appeared by attorney,—the only way it could have appeared. Was it served with process? The circuit court held that the service was void for the reason that it was served upon the attorney for the plaintiff, who was also president of the defendant company. Can it be that service of process upon the plaintiff's attorney would constitute notice to the defendant? If such was the case, the plaintiff's attorney might direct process to issue, and either accept service, or appear to the suit by demurrer or answer, and thus waive notice for the defendant; and an opportunity would be afforded him to file an answer admitting the plaintiff's claims, and thus deprive the defendant of all opportunity of having a day in court, and it might thus be deprived of its property without due process of law.

Again, the duties of the attorney for the plaintiff in this case are utterly incompatible with his duties as president of the defendant furniture company. As plaintiff's attorney it was his duty to assert and enforce the alleged mechanic's lien; and, representing the furniture company, it was his duty to make such defense as was legal and proper, or at least give the directors of said company notice of

·the suit, and the benefit of his testimony, advice, and any information he was possessed of, bearing upon the matter in controversy. Upon the question as to the consequences of an attorney's representing conflicting interests, the law is stated in 3 Am. & Eng. Enc. Law (2d Ed.) p. 299, as follows: "The effect of an attorney's acting for parties whose interests are conflicting is to render all acts and consents voidable at their option, if not absolutely void. Thus, where the attorney for certain executors and devisees in a proceeding against a decedent's estate to sell lands for the payment of the decedent's debts also represents a claimant against the estate, and procures judgment for her, the judgment will not be allowed to stand, although there may not have been fraud, actual or intended." So, in the case of *Arlington* v. *Arlington*, 116 N. C. 170, (21 S. E. 181), the court, by Montgomery, Judge, held: "It is not necessary that there should have been actual fraud in the procurement of those judgments, in order that they might be set aside, by motion.  *  *  *  The rule which forbids the same attorney from representing both parties in adversary proceedings rests upon the broad principle of public policy which precludes persons occupying these fiduciary relations from representing conflicting interests that may tempt them to disregard duty, and lead to injury on one side or the other. The law will not permit its licensed attorneys to assume relations that will subject them to its temptation, upon grounds of public policy, and it is for this reason that an attorney will not be permitted to represent both sides in any litigated matter;" citing *Gooch* v. *Peebles*, 105 N. C. 411, (11 S. E. 415). Again, where the lien of a mortgage was sought to be enforced, in the case of *Annely* v. *De Saussure*, 12. S. C. 507, it was held that the positions of executor for the estate of a mortgagor and attornety for the mortgagee are inconsistent, and the same party cannot properly fill both. So, in the case of *Spinks* v. *Davis*, 32 Miss., 154, in which an attorney, who was administrator of a decedent, took a claim for collection against the estate, the court, in its opinion, said: "It was the duty of the attorney diligently to prosecute the claim according to law, and to collect it, if it could be done by legal means. It was the duty of the administrator to scrutinize the claim rigidly, and to refuse payment, if there

was any doubt about its justice in fact, or its validity according to strict legal rules; to defend upon the ground of the statute of limitations, the illegality or want of consideration of the claim, or any other bar which was a sufficient defense to it in law. And all such defenses it was the plain duty of the attorney to resist. In short, the attorney was bound to protect the interests of his client, and the administrator was primarily bound to protect the legal interests of the estate. Under such circumstances, the attorney could not have performed his duty to prosecute the claim, if its validity had been doubtful, consistently with his duty to defend the estate against its collection." The case of *George* v. *Ginning Co.* (decided by the supreme court of South Carolina March 9, 1896) (24 S. E. 41), which is cited by appellees in their brief, holds that no valid service of process upon a foreign corporation can be had by serving the papers upon one of its officers, who is himself plaintiff in the action, or attorney in fact for the plaintiff. The court, in the course of its opinion, says: "The question, then, resolves itself into an inquiry whether a person can legally commence an action against a foreign corporation, of which he happens to be an officer or agent, by serving himself with the process or summons necessary to commence such action. So far as we are informed, there is no authority in this State upon the point, and we do not think any is needed to show that such a proposition, so utterly at variance with any proper conception of the due and orderly adminstration of justice, cannot for a moment be entertained. To concede such a proposition would open the door to the grossest fraud, which would be a reproach to the administration of justice. Of course, we do not mean to intimate that any fraud was intended in this particular case; but we cannot assent to a proposition which, if established, would afford such an easy mode of perpetrating frauds,"—citing *Buck* v. *Manufacturing Co.* 4 Allen, 357; *Behm* v. *Institution*, 125 Ind. 135, (25 N. E. 173.) In the former case it was held that it is not sufficient service of a writ against a corporation to serve the same upon the plaintiff, as president of the corporation, and a default which has been entered in an action in which the writ was thus served will be stricken off by the court, of its own motion, whenever the facts are brought to its attention; and in the lat-

ter case it was held that a statute providing for the service
of process upon any agent of a foreign corporation, when
sued, need not contain an exception, as to actions brought
against it by its agent, that process shall not be served
on such agent, to render such service void. Counsel for the
appellant seek to draw a distinction between the case of
*George* v. *Ginning Co. supra,* and the case at bar, in this:
that the service in that case was upon an officer of the de-
fendant corporation, he at the same time being the attor-
ney in fact of the plaintiff for the commencement and pros-
ecution of the action, while in the case at bar the officer
upon whom the process was served was the attorney at law
of the plaintiff. But it occurs to us that the powers of the
attorney in fact would be more limited than those of the
attorney at law. The attorney in fact would be confined
to the specifications of his power of attorney, while the at-
torney at law would be clothed with the general powers
conferred by law upon the profession, and interested in the
result, to the extent of his fees. And if process could not
be served upon an officer of a defendant company who was
an attorney in fact for the plaintiff, and who was expressly
authorized and empowered to bring the suit, how could
such process, with any degree of propriety, be served upon
an officer of such defendant company who was attorney at
law for the plaintiff, with all the powers incident to that
relation? An attorney at law is so closely identified with
the interests of his client in the prosecution of his suit,
and his interest is such in the result, that I cannot think
that process served upon such attorney, who was at the
same time president of the defendant corporation, should
constitute adverse notice to such defendant; and process
thus served would not authorize a judgment of decree.
That service of process executed in this manner is absolute-
ly void, see 22 Am. & Eng. Enc. Law, p. 119, note 1; *Rehm*
v. *Institution,* 125 Ind. 135, (25 N. E. 173); 6 Thomp. Corp.
section 8047; *Mining Co.* v. *Edwards,* 103 Ill. 472.

Having arrived at this conclusion, we next inquire
whether there has been such appearance on the part of the
defendant furniture company as would constitute a waiver
of notice. This question has already been considered, in de-
termining whether a demurrer was filed to the plaintiff's bill
by the Point Pleasant Furniture Company; and the conclu-

sion was that said company did not appear and demur in the only manner it could have appeared, to wit, by counsel, and that there was plainly a misrecital in said interlocutory decree, which the court had a right to correct on motion. We may cite, in support of the right of the circuit court to correct misrecitals in interlocutory decrees, 5 Enc. Pl. & Prac. p. 1041, where it is said. "It is well settled that interlocutory orders adjudicating no question raised by the pleadings may be amended or vacated at any time before the case is disposed of by final decree;" citing *Ryon* v. *Thomas*, 104 Ind. 59, (3 N. E. 653), where it is held that "an interlocutory order entered in a matter of purely equitable jurisdiction is within the control of the court making it, until the proceeding in which it is made is finally disposed of; and it may be amended, modified, or set aside, as the right of the case requires, either upon direct and summary proceedings for that purpose, or by the court upon its own motion. See, also, *Steenrods's Adm'r* v. *Railroad Co.*, 25 W. Va. 135, where SNYDER, JUDGE said, "The same court has the power, before the final decree, to correct any error it may have committed." To the same effect, see *Miller's Adm'r* v. *Cooks' Adm'rs*, 77 Va. 806 (Syl., point 3); *Wright* v. *Strother*, 76 Va. 857 (Syl. point 1). See, also, *Kendrick* v. *Whitney*, 28 Grat. 652, 653, as to the manner of making such corrections. If, then, the Point Pleasant Furniture Company was not served with notice and did not appear in the cause before this case was before this court on the former appeal, it follows that the rights of said company were in no manner adjudicated or passed upon by the conclusion reached in the opinion reported in 40 W. Va. 968, (21 S. E. 769); and while it is true the defendant company was a necessary party to this suit, and, when the appeal was awarded, was cited at the instance of the appellant, yet unless said company had been properly summoned before the circuit court, or voluntarily appeared and pleaded, this Court, in reviewing the decision of the circuit court, could not have passed upon the rights of said furniture company with reference to the matter in controversy; and, as far as the appearance of said company in the court below is concerned, it will be seen, by reference to the opinion of this Court (40 W. Va. 710, 21 S. E. 769), that the demurrer in the cause was not treated and considered as the

demurrer of the Point Pleasant Furniture Company, but was expressly considered as the demurrer of other parties, and the action of this Court in overruling said demurrer in no manner affected or concluded the question as to the mechanic's lien asserted by the plaintiff.

We come now to consider the last assignment of error, which claims that the court below erred in dismissing the plaintiff's bill. This bill was filed, as we have said, for the purpose of enforcing a mechanic's lien. It is claimed said lien was filed on the 12th of July, 1892. On December 19, 1892, the plaintiff caused the subpoena to be issued, returnable to January rules, 1893. On December 26, 1892, R. Wiley, Jr., as attorney for the plaintiff, caused said subpoena to be served upon himself, as president of the Point Pleasant Furniture Company, and at February rules, 1893, the bill was filed. For reasons hereinbefore stated, and following what we regard as the law bearing upon the question, we have held that such service was contrary to the policy of the law, and void. Was the Point Pleasant Furniture Company before the circuit court, then, either by service of process or by voluntary appearance? For reasons above stated, we have concluded that said above company did not join in the demurrer, and was not in that way made a party to the suit; and if we are correct in saying that, in the circumstances, process could not be served upon Rankin Wiley, Jr., as president of said company, surely Wiley, as such president, would not be authorized to appear and answer for the company, as he attempted to do in this case. The appellant, in his brief, relies upon the case of *Newman* v. *Mollohan*, 10 W. Va. 448, which was an attachment case against several defendants, among whom was Newman. A joint judgment was rendered against the defendants. One of them, who had pleaded, took an appeal, and the court of appeals affirmed the judgment. Newman, against whom the joint judgment was rendered (a nonresident), after due notice, moved the circuit court which rendered the judgment to reverse and annul the same because the order of publication against him had not been made in the manner prescribed by law, and because there had been a personal judgment against him, though he had never been served with process, etc. It was held that the circuit court properly overruled his motion, as,

after the affirmance of the judgment by the court of appeals, defendant could not make a motion in the circuit court to reverse or modify the judgment, though the record of the case in the court of appeals failed to show that the defendant making the motion was notified of the appeal; it being conclusively presumed he was so notified, and that all questions raised by his motion had been considered and decided by the court of appeals when it affirmed the joint judgment. This case is very different from the one at bar. Here there was no joint judgment. Part of the defendants (not including the furniture company) demurred to the plaintiff's amended bill, which demurrer was sustained; and, the plaintiff declining to amend, it was decreed that the plaintiff's bill and amended bill be dismissed, and the plaintiff appealed.

When the writ issued from this Court, it is claimed that H. R. Howard, attorney for the defendant company, accepted service of such process. This process and its return, however, are not part of the record in this cause. It appears that H. R. Howard was the attorney appointed to accept service for said furniture company, and, if he did so, it would have no further effect than it would if such process had been served on him, as such attorney, by an officer.

The difference between this case and that of *Newman* v. *Mollohan*, is that, although the furniture company was no party to the demurrer, the judgment thereon was in its favor, and not against it, as it was against Newman. And the question here is whether, with a decree in its favor, of which it had no inclination to complain, the plaintiff could, on an appeal from a decree entered in a cause in which the furniture company was not served with process and did not appear, obtain a decree in this Court binding and conclusive upon said company, which never was before the circuit court by process or otherwise, and which has not as yet had an opportunity of being heard as to any judgment of which it could complain. In the case of *Newman* v. *Mollohan*, Newman was before this Court, praying the reversal of a judgment against himself in a cause in which he was a joint defendant, and a joint judgment had been obtained against him and others. In the case at bar, no judgment or decree had been obtained against the furni-

ture company, and the appellant was seeking to show that it was entitled to a decree against said company, and that its suit had been improperly dismissed. In order to do this, the burden was upon the appellant to show that it had properly acquired jurisdiction by service of process upon said company, or by its voluntary appearance. The presumption that everything had been properly done to confer jurisdiction does not come to the aid of the appellant in this case, as it would if a decree had been obtained against said furniture company, and it was appealing from said decree. When the United States Blowpipe Company obtained this appeal, and cited the furniture company to appear, it undertook to show to this Court that it was entitled to a decree against said company, and that the circuit court had improperly dismissed its bill. It could not do this unless it made it appear that the furniture company had either been summoned or voluntarily appeared. This could only be shown by the record. The law is thus stated (2 Enc. Pl. & Prac. 363, 364): "In the review of questions on appeal, the appellate court is bound by the record, and matter outside of it cannot be considered. It follows that all errors must be fully presented thereby." In the celebrated case of *Underwood* v. *McVeigh*, 23 Grat. 418 *et. seq.* Christian, Judge, in delivering the opinion of the court, so clearly and concisely states the law bearing upon this question, that I may be pardoned for quoting his expressive language. He says: "The authorities on this point are overwhelming, and the decisions of all the tribunals of every country where an enlightened jurisprudence prevails are all one way. It lies at the very foundation of justice that every person who is to be affected by an adjudication should have the opportunity of being heard in defense, both in repelling the allegations of fact, and upon the matter of law; and no sentence of any court is entitled to the least respect in any other court, or elsewhere, when it has been pronounced *ex parte*, and without opportunity of defense. An examination of both sides of the question, and deliberation between the claims and allegations of the contending parties have been deemed essentially necessary to the proper administration of justice by all nations, and in every stage of social existence. A tribunal which decides without hearing the defendant, or giving him an opportu-

nity to be heard, cannot claim for its decrees the weight of a judicial sentence,"—citing 1 Smith, Lead. Cas. (Ed. 1872) pt. 2 pp. 1118-1120; also, *Bloom* v. *Burdick*, 1 Hill, 130-140, where it is held that: "It is a cardinal principle in the administration of justice that no man can be condemned or devested of his rights until he has had the opportunity of being heard; and, if judgment is rendered against him before that is done, the proceeding will be as utterly void as though the court had undertaken to act where the subject-matter was not within its cognizance." And numerous other authorities are there cited.

It is the duty of the appellant to present the record to the appellate court, and, if it appears from an examination thereof that necessary any proper parties were not before the circuit court, this Court will reverse and remand the cause, in order that they may be convened. My conclusion, from an examination of the entire record, is that the defendant the Point Pleasant Furniture Company has never been before the circuit court, either by proper service of process or by voluntary appearance. It is true that, after the appeal was taken, process emanating from this Court was accepted by H. R. Howard, the attorney for said corporation, appointed, under the statute, to accept service for it, the effect of which was to avoid the expense of having it served. When the cause was thus brought into this Court, it could only act upon the record presented and complained of by the appellant; and, in referring to the opinion of this Court, 40 W. Va. 704, (21 S. E. 771), it will be seen that HOLT, PRESIDENT, speaking for the Court, says, "Each one of these four defendants who demur is a proper party, and they have no right to complain for other people, who do not themselves complain that such other persons are not proper parties defendant." When we look to the conclusion of said opinion, it is perceived that he designates what parties are meant when he speaks of the "four defendants who demur," thus: "From the view of the case here expressed, it results that the demurrer of the defendants, the Buss Machine Works, the Lane & Bodley Company, the Laidlaw & Dunn Company, and James P. Hayes, to plaintiff's amended bill, should have been overruled,"—showing clearly that this Court, in passing upon the demurrer, did not consider

and treat it as the demurrer of the furniture company; and, such being the case, can we say that the rights of the company; but, while that return was upon the summons, manner adjudicated or concluded by the ruling and decision of this Court upon the demurrer of other parties? We have attempted to show that said furniture company was not before the circuit court by reason of the service of the summons on Rankin Wiley, Jr., as president of said furniture company; but while that return was upon the summons, no *alias* could issue under the statute. So held in the case of *Gorman* v. *Steel*, 1 W. Va. 1, in which the Court, in its opinion (page 14), says: "The statute (section 3, chapter 170, of the Code of 1860) only authorizes the clerk to issue an *alias* where the original has not been executed, and not where it has been, as in this case, returned executed, and was therefore *functus officio*." This section is identical with section 3, chapter 124, of the Code of 1891. It does not anywhere appear that an *alias* was asked for. Section 11, chapter 75, of the Code, provides that "unless suit to enforce a lien is commenced within six months after the person desiring to avail himself thereof shall have filed his account in the clerk's office as hereinbefore provided such lien shall be discharged; but a suit commenced by any person having such lien shall, for the purpose of preserving the same, inure to the benefit of all other persons having a lien under this chapter on the same property." And the latter portion of section 10 provides that, "Should the party bringing the suit from any cause fail to establish his claim, the suit shall not for that cause be dismissed, but it may be prosecuted by any other party thereto having such lien in the same manner as if it had been commenced by him."

Was this suit commenced within six months after the plaintiff filed its account in the clerk's office? Now, while there is some diversity of opinion upon this question, the weight of authority appears to be that the suit or action is commenced when the writ issues. So, in *Ross* v. *Luther*, 15 Am. Dec. 341, 4 Cow. 158, it was held that the issuing of the writ is the commencement of the action. The authorities are collated in a note to that case, and we find it there stated that it is undoubtedly the general rule in the United States, except when it is otherwise provided by statute, that an action is deemed commenced, as far as the par-

ties to it are concerned, from the time that the summons or
other process is issued and delivered, or put in the course
of delivery, to the officer, with a *bona fide* intent to have it
served; and the authorities *pro* and *con* are numerously
cited. The question, however, has recently come before this
Court, and was passed upon in the case of *Lambert* v.*Man-
ufacturing Co.* 42 W. Va. 813, (26 S. E. 431), where it was
held (Syl., point 2) that: "The process, in this State, to
commence a suit, is a writ commanding the officer to whom
it is directed to summon the defendant to answer the bill
or action, and must be returnable within ninety days after
its date to the court, on the first day of the term, or in the
clerk's office to the first Monday in a month, or to some
rule day; and if, at the return day of any process, it be
not returned, an *alias* etc., may be issued, etc." And in
point three it is held that the suing out of the writ of sum-
mons is the commencement of the action, but the date of
the writ is not conclusive, but is *prima facie* evidence of
the commencement of the action. Now, while it is true
this suit was commenced within six months after the plain-
tiff's account on which it claims a mechanic's lien was filed
in the clerk's office, as we have seen, the process was not
served on the furniture company before the return day;
and, when the rule day came to which the process was re-
turnable, no *alias* was asked for. What, then, was the ef-
fect of this failure on the part of the plaintiff to ask for an
*alias* summons? In *Lambert* v. *Manufacuring Co.* 42 W.
Va. 816, (26 S. E. 431,) HOLT, PRESIDENT, delivering the
opinion of the court, said: "When oyer of the writ is
craved, it becomes part of the record of the suit, for certain
purposes,—as, for example, to show when the action was
commenced." This suit was commenced in time, as is
stated above, but it was not followed by successive pro-
cesses; and it could not have been served after the return
day, because the officer was commanded to make his return
as to the manner of execution to the rule day. In the case
of *Etheridge* v. *Woodley*, 83 N. C. 11 (a state in which the
statute is the same as ours), it was held that: "Where an
original summons issued August, 1871, which was not
served, and was not in three years followed by appropriate
successive processes in order to constitute a continuous
single action, the suit cannot be made to relate to the is-

suance of the original process, and so avoid the bar of the statute of limitations, by taking out a second summons neither in form an *alias* nor purporting to be such. The foregoing rule is not varied by the fact that an order was made by the court for the issuance of an *alias*, which was neglected or disregarded by the clerk." The court, in its opinion (page 13), says: "If the failure to sue out the proper and successive processes of an *alias* and *pluries* summons works a discontinuance, and prevents the application of the rule of relation to the first, the statutory bar prevails, and defeats the action. The cases cited in the argument for the defendant seem conclusively to settle the question, and to determine that the original summons must be followed by appropriate successive processes, in order to a continuous action referable to the date of its issue,"—citing *Fulbright* v. *Tritt*, 19 N. C. 491; *Governor* v. *Welch*, 25 N. C. 249; *Hanna* v. *Ingram*, 53 N. C. 55. In the last case (an action for slander) the first writ, issued in February, 1857, returnable to spring term following, was not executed. A term then intervened, and the second writ, in form an *alias* which was served, was returnable to spring term, 1857. The defamatory words were uttered within six months of the date of the first writ. It was held that the latter writ was the initiation of the action, and it was barred. "This latter, although denominated an '*alias*' does not connect itself with the other so as to make one continuous suit,—a term having intervened from which no process issued." In the same case it was held that, while a general appearance by attorney will dispense with process to bring a defendant into court, such appearance has no retrospective effect, and is not equivalent to service in time to avoid the statute of limitation, when the statute period has elapsed before the entry of appearance. Again, in *Hazleton* v. *Morris*, 28 Md. 68, it was held that where a party institutes a suit, and the summons proves ineffectual to bring the defendant into court, and is returned by the sheriff in order to keep the suit alive, the summons must be regularly renewed from term to term, until the defendant is taken, and the omission so to do operates a discontinuance of the action. See, also, *Soulden* v. *Van Rensselaer*, 3 Wend. 476, where the court says: "I think all the cases show that the process subsequent to the first must be founded upon it, in

order to effect a continuance of the suit." And in *Baskins* v. *Wilson*, 6 Cow. 471, it was held: "To save the statute of limitations on the ground of unexecuted process within the six years, the plaintiff must reply that process was sued out and returned *non est inventus*, and connected by continuances with the intermediate process on which the defedant was arrested, and this replication must be sustained by evidence. See, also, *Koonce* v. *Pelletier*, 115 N. C. 233, (20 S. E. 391), where the court holds that a failure to keep up a chain of summonses issued against a party by means of an *alias* and *pluries* summons is a discontinuance as such party, and, if a summons is served after a break in the chain, it is a new action as to him, and the running of the statute of limitations is not arrested until the issuance of the summons so served. In the case at bar no summons was ever served on a party on whom service would have been proper, and no *alias* was ever issued; and, under the authorities above quoted, I hold that the suit was discontinued, and, even if an *alias* could have been properly issued after the rule day at which the process was returnable, more than the six months had elapsed at the date of the February rules, 1893. No *alias* was, however, then asked for, nor at any time since; and, as we have seen, if one was now issued, the suit would commence from the date it was so issued, and it would not relate back to the commencement of the suit. This was the attitude presented by this case when it came before the circuit court for final action. The plaintiff was seeking to enforce an alleged mechanic's lien against the furniture company, which could not be done unless that company had been brought before the court by proper process, which had not been done, and it was then too late to serve process upon it. The plaintiff, in its amended bill, had asserted several judgment liens against said furniture company, but they had been obtained since the original bill was filed, by the same attorney who had served process upon himself as president of said company in the proceeding to recover the judgment, and, even if the character of the suit could have been changed to this extent by amendment, these judgments could not have been sustained and enforced, and my conclusion is that the circuit court committed no error in dismissing the plaintiff's bill and amended bill. The de-

cree complained of, in my opinion, therefore, should be af-
firmed.

*Reversed.*