CLARK, C. J., dissenting; STACY, J., concurs in the dissenting opinion.
APPEAL by defendant from Daniels, J., at September Term, (619) 1921, of ALAMANCE.
Plaintiff brought suit against the Piedmont Power Light Company and the Alamance Railway Company to recover damages for the alleged negligent death of her intestate. The Alamance Railway *Page 663 
Company operates an interurban street car line connecting Burlington, Graham, and Haw River, and the Piedmont Company owns a plant in which electricity is generated for running the cars. The intestate, in January, 1918, was in the employ of the Alamance Railway Company, and on 22 January, was operating a freight car on the company's line for the purpose of clearing the tracks of ice and snow. There was an unsecured air pump in the car. Near Graham the car was derailed and turned over and the pump fell upon the intestate, causing his death. The complaint sets out several alleged acts of negligence. There was denial by the defendant and a plea of contributory negligence. At the conclusion of the evidence the court dismissed the action against the Piedmont Company, and retained it against the railway company. Issues of negligence, contributory negligence, and damages were answered in favor of the plaintiff.
The intestate's death occurred on 22 January, 1918. The original summons was issued 13 January, 1919, and on that day the sheriff went to the offices of the two defendants and informed J. H. Hardin, their local agent, that he had for service a summons against the defendants in favor of the plaintiff, advised him of the contents, and tendered him a copy of the summons for each defendant. Thereupon Hardin, believing that he was not a proper person upon whom the summons could be served, in good faith told the sheriff that he was not an officer of either of the companies, nor a proper person upon whom to make service, and that J. H. Bridgers was the president of each company. The sheriff did not put either copy of the summonses in the possession of Hardin; but he kept them in his own possession and departed. Hardin was not an officer of either company, but at that time was performing the local duties of the president during the latter's temporary absence. Said Bridgers lived in Henderson. The sheriff relied on Hardin's statement, and made no effort to serve the president in the county of his residence, but awaited his return to Alamance.
The summons, which was issued on 13 January, 1919, was returnable to a criminal term of one week, which convened on (620) 3 March; the sheriff made no return on the summons to that term, but kept it in his possession; no application was made at the return term for an alias summons, nor was an alias issued or ordered. On 10 April, 1919, one of the attorneys for the plaintiff filed before the clerk a sworn statement that a summons had been issued on 13 January, and turned over to the sheriff, and that the summons had never been served on Bridgers. The clerk then issued a summons marked alias (10 April), returnable 26 May, which was served on Bridgers by the manual delivery of two copies; and at the same time the sheriff made manual delivery of two copies of the original summons. There *Page 664 
was no session of the Superior Court between the March and May terms.
The defendant insisted that the action was not commenced within twelve months after the death of the intestate.
Judgment for plaintiff. Defendant appealed.
The legal right to recover damages for death caused by wrongful act did not exist at common law, and was first conferred in England by Lord Campbell's Act, 9 and 10 Vict., ch. 93 (1846). Thereafter the main features of this statute were enacted by the General Assembly, and are now included in the Consolidated Statutes. Section 160 provides, in part, that when the death of a person is caused by the wrongful act, neglect, or default of another, . . . the person or corporation causing the death shall be liable to an action for damages to be brought by the personal representative of the deceased within one year after such death. The words "to be brought within one year" have been interpreted, not as a statute of limitation, which must be pleaded (C.S. 405), but as a condition annexed to the plaintiff's cause of action; and at the trial the plaintiff must prove that his action was instituted within the time prescribed by law. Taylor v. IronCo., 94 N.C. 526; Best v. Kinston, 106 N.C. 206; Gulledge v. R. R.,147 N.C. 234; S. c., 148 N.C. 568; Hall v. R. R., 149 N.C. 109; Trull v. R.R., 151 N.C. 546; Bennett v. R. R., 159 N.C. 346.
At the hearing the defendant contended that the plaintiff's action had not been instituted within twelve months after the intestate's death, and at the conclusion of the evidence sought a directed verdict both by motion and by written request. The intestate's death occurred on 22 January, 1918. The original summons was issued on 13 January, 1919, and was returnable to a criminal term of one week, beginning on 3 March. It was received by the sheriff on the day it was issued, (621) but was not returned to the March term. In fact, it was not served, according to the officer's certificate, until 10 April, and was then returned to the May term. On 10 April, upon affidavit filed by an attorney for the plaintiff, the clerk issued another summons against the defendant, returnable to the May term (26 May). This summons was indorsed "alias original," but there was nothing else to indicate that it was intended for alias process; it was issued without an order from the judge, and was served on 10 April and returned with the original summons to the May term. The act to restore the provisions *Page 665 
of the Code of Civil Procedure in regard to process and pleadings went into effect 1 July, 1919.
An action is commenced as to each defendant when the summons is issued against him (C.S. 404, 475), but in actions in personam jurisdiction of a cause and of parties litigant can be acquired only by personal service of process within the territorial jurisdiction of the court, unless there is an acceptance of service or a general appearance, actual or constructive.Bernhardt v. Brown, 118 N.C. 701; Vick v. Flournoy, 147 N.C. 212; Warlickv. Reynolds, 151 N.C. 610; 21 R.C.L. 1315. The summons must be served on a corporation by the delivery of a copy thereof to one of certain designated officers or to a local agent (C.S. 483); and this requirement, it is held, must be strictly observed. Allen v. Strickland, 100 N.C. 226; Smith v.Smith, 119 N.C. 314; Lowman v. Ballard, 168 N.C. 18. In the case last cited, Hoke, J., says: "Authority here is also to the effect that when a statute provides for service of summons or notices in the progress of a cause by certain persons or by designated methods, the specified requirements must be complied with or there is no valid service." The case of Aaron v. Lumber Co., 112 N.C. 189, also is directly pertinent; and, indeed, is decisive of the question here presented. The constable in the township in which the defendant had its principal place of business served the summons by "handing" it to the president and the secretary and treasurer of the defendant. They were the only officers. They read the summons and returned it to the constable. The court held that since no copy of the summons was left with either officer, the pretended service was not legally sufficient. In Amy v. City of Watertown, 130 U.S. 317, Mr. JusticeBradley said: "The cases are numerous which decide that when a particular method of serving process is pointed out by the statute, that method must be followed, and the rule is especially exacting in reference to corporations," and cites Kibbe v. Benson, 84 U.S. 624; Alexandria v.Fairfax, 95 U.S. 774; Settlemier v. Sullivan, 97 U.S. 444; Evans v. R. Co., 14 Mees. W. 142; Walton v. Universal Salvage Co., 16 Mees. W. 438;Brydolf v. Wolf, 32 Iowa 509; Hoen v. A. P. R. Co., 64 Mo. 561; LehighValley Ins. Co. v. Fuller, 81 Pa. 398.
The appeal shows, not a technical irregularity in the service of the summons, but a total failure of the service of the first (622) summons. The statute in plain terms requires the delivery of a copy of the summons, and provides that the proof of service shall be the certificate of the officer, the affidavit of the printer, or the written admission of the defendant.
Very clearly, in our opinion, the interview between the sheriff and Hardin, the local agent, did not amount to service of the summons. The judge found that Hardin acted in good faith and not with intent *Page 666 
to deceive. No copy was left with him, and the certificate of the sheriff, which is the proof provided by statute, shows service, not on Hardin, but on Bridgers, the president. The cases cited by the plaintiff —Johnson v. Johnson, 86 Ga. 450; Taylor v. Cook, 1 N.J.L. 54 — are not relevant to the facts in the case at bar. In the former the officer, by mistake, left a copy of the writ at the home of the defendant's brother, and the defendant accepted such delivery as service; and in the latter the defendant directed the place of service.
A proper application of these principles provides substantial support for the argument that neither the officer's conversation with Hardin nor the pretended service of the original summons on the president after the return day was effectual to confer jurisdiction. In each instance such service was a nullity. In the latter case, after the return day the writ lost its vitality, and service thereafter made could not confer upon the court jurisdiction over the defendants so served. 19 Ency. P. P., 600; 21 R.C.L. 1273; 32 Cyc. 456; S. v. Kennedy, 18 N.J.L. 22; Hitchcock v.Haight,7 Ill. 603; Draper v. Draper, 59 Ill. 119; Peck v. La Roche, 86 Ga. 314;Cummings v. Hoffman, 113, N.C. 268; Peebles v. Braswell, 107 N.C. 68; Mfg.Co. v. Simmons, 97 N.C. 89.
If service of the original writ was ineffectual, what was the legal import of the second summons? Did it mark the commencement of a new action or relate back and continue in effect the suit originally begun? That the original summons must be followed by process successively and properly issued in order to preserve a continuous single action referable to the date of its issue, is familiar learning. This successive process is an alias or pluries writ or summons. Fulbright v. Tritt, 19 N.C. 492; Pennimanv. Daniel, 91 N.C. 434; S. c., 93 N.C. 332; Etheridge v. Woodley,83 N.C. 11; Battle v. Baird, 118 N.C. 861. Such is the manifest significance of C.S. 481: "A failure to keep up the chain of summonses issued against a party, but not served, by means of an alias or pluries summons, is a discontinuance as to such party; and if a summons is served after a break in the chain, it is a new action as to such party, begun when the summons was issued."
We must, therefore, determine (1) whether there was a break in the chain of process, and (2) whether the second summons continued the original suit.
Chitty says: "If the proceeding should be by writ of summons, (623) then the plaintiff, or his attorney, must return `non est inventus,' and enter the same of record in due time. . . . If it be necessary to continue the first writ of summons, then an alias or pluries may be issued into the same or another county; and it is very essential to take care that the first writ, whether of summons or capias, be in due time returned non est inventus, and that every continued *Page 667 
process to save the statute of limitations must have a memorandum indorsed or subscribed, specifying the date of the first writ." Chitty's Practice, 408; 3 Bl. 280 et seq.; Tidd's Practice, 111; Elliott's Gen. Practice, 459; 20 Ency. P. P. 1178; 32 Cyc. 445; 21 R.C.L. 1266.
This principle is approved in our decisions. In Fulbright v. Tritt,supra, the facts are stated as follows: "The plaintiff, on 20 September, 1834, sued out a writ in case for slanderous words, commanding the sheriff to take the `body of Henry Tritt for Archibald Tritt,' to answer, etc. At Fall Term, 1834, the sheriff returned the writ `executed on Henry Tritt — A. Tritt not to be found.' No process issued from this term against Archibald Tritt. At Spring Term, 1835, the plaintiff entered a nol. pros. as to Henry Tritt, and issued what the clerk indorsed as an alias writ, but which was in its terms an original writ, against Archibald Tritt, returnable to Fall Term, 1835; and the sheriff returned the same `not found.' Then a writ, which the clerk called a pluries, but which was in terms an alias, was issued, returnable to Spring Term, 1836. This was executed; and the defendant appealed and pleaded the statute oflimitations. The speaking of the words, as charged in the declaration, was within six months of the issuing of the original writ against `Henry Tritt for Archibald Tritt,' but not within six months of the date of the first writ issued against Archibald Tritt, which was on 15 April, 1835." Daniel,J., said: "If the original writ had been correctly issued against Archibald Tritt, returnable to Fall Term, 1834, as he was not arrested, the plaintiff should have issued an alias from that term. There was not an alias issued from that term, and the first suit was discontinued. The writ which issued on 15 April, 1835, against Archibald Tritt, must be considered the original in this action." Fulbright's case is approved in Etheridge v. Woodley,supra; Webster v. Laws, 86 N.C. 180; Hanna v. Ingram, 53 N.C. 55. In the case last cited reference is made to an intervening term, but inFulbright's case it was held that the alias should have issued from the term to which the original summons was returnable.
In Webster v. Laws, supra, the facts were these: "The summons in the action was issued by a justice of the peace on 9 August, 1879, and the cause tried on 20th of the month. The defense set up was the pendency of another suit, instituted before another justice for the same cause of action and between the same parties, the warrant in which was returnable on the same day when the second suit was (624) begun, but it does not appear to have been served. On the return day the justice who issued the first warrant was absent from the county and remained away several days. No further action was taken therein until some time afterwards, when an entry of nonsuit was made on the docket of the justice by himself. Upon these facts the Court declared, *Page 668 
as matter of law, that the first action was depending and undetermined at the time of the issuing and serving of the summons in the second action, and gave judgment against the plaintiffs, from which they appealed."
Smith, C.J., said: "We do not concur in the ruling that, upon the facts founds, the first action was pending when the second action was begun. The process not having been served, was exhausted on the day fixed for its return, and the action was in law then discontinued. This has been repeatedly decided in this Court. Fulbright v. Tritt, 19 N.C. 491; Governorv. Welch, 25 N.C. 249; Hanna v. Ingram, 53 N.C. 55; Etheridge v. Woodley,83 N.C. 11.
"A discontinuance of process is different from a discontinuance of the action. `When a plaintiff leaves a chasm in the proceedings of his cause,' says Mr. Sellon, `as by not continuing the process regularly from day to day and term to term, as he ought to do, the suit is discontinued and the defendant is no longer bound to attend.' 2 Sellon's Prac. 458; 3 Black. Com. 296."
From these authorities we deduce the conclusion that the original action was discontinued, unless preserved by the summons issued on 10 April. There is no contention that it was a pluries writ. Was it an alias? In the caption are the words "alias original," but there is nothing more to indicate that it was intended as alias process. In Simpson v. Simpson,64 N.C. 428, it was held that the character of process purporting to be original is not changed by an indorsement of the word "alias." As was said in Fulbright's case, the alias should have issued from the return term. To the suggestion that the original had not then been returned there are two answers. In the first place, there is abundant authority that alias process follows the return of the original. Chitty's Prac., supra; Tidd's Prac.,supra; Elliott's Gen. Prac., supra; 20 Ency. P. P., supra; 32 Cyc.,supra; 21 R.C.L., supra. Here the original summons was in the hands of the sheriff when the second was issued, and they were served together. If the return of the original process was necessary the second evidently was not an alias; and, in the second place, if the return of the original was not necessary, the order for the alias should have been applied for at the return term; and in any event there should have been something in the body of the second summons to indicate its alleged relation to the original.
True, the original summons was returnable to a criminal term (625) — but in accordance with the statute: "At criminal terms of court, all civil process may be returned and pleadings filed which may be returned and filed at civil terms; motions may be heard upon due notice, and trials in civil actions may be heard by consent of parties." C.S. 1444. Watson v. Mitchell, 108 N.C. 364. "Motions upon *Page 669 
due notice" are formal motions, as for alimony (Zimmerman v. Zimmerman,113 N.C. 434), or to set aside a judgment (Allison v. Whittier,101 N.C. 490), but not such as are merely incidental to the progress of a pending action. Coor v. Smith, 107 N.C. 431.
Nor did the defendant waive its right to insist that the plaintiff had not complied with the statutory condition. It is true that the voluntary appearance of a defendant is equivalent to personal service of summons upon him (C.S. 490); and if this statute and the decisions construing it were applicable to the record in this case, the plaintiff's argument would merit serious consideration. But they are not applicable for the reason that the defendant's appearance was not voluntary. Appearance was made and an answer filed in response to proper service of the second summons; and if the defendant had not answered, the plaintiff no doubt would have recovered a judgment for the entire amount demanded in the complaint. The defendant's appearance was necessary to its resisting recovery in the action instituted by the plaintiff when the second summons was issued. The complaint alleged that the action was instituted within less than one year after the death of the plaintiff's intestate, and the allegation is denied in the answer. The defendants were not required to take action or move for judgment of nonsuit until the plaintiff's evidence was concluded, because service of the second summons was good. But then, at the first opportunity, the defendant insisted that the pretended service of the first summons was void, that the second was the beginning of the action in which the answer was filed, and that the defendant was therefore entitled to a directed verdict.
His Honor did not find as a fact that the defendants were served with summons on 13 January, but upon facts determined merely adjudged that the summons issued at that time was duly served. It is hardly necessary to remark that this is a judicial order or determination of his Honor, involving a matter of law or legal inference, which is subject to review on appeal. In like manner, the statement of Hardin that he was not a proper person upon whom process should be served was an inference of law which did not absolve the officer from the duty of knowing, or ascertaining, whether or not such legal conclusion was correct.
Disregarding the question of a want of power to impart vitality to an exhausted process, we are unable to adopt the suggestion that his Honor's findings of the facts was intended by way of amendment to validate a defective service. (626)
Upon the facts disclosed by the record, we are constrained to hold that the action was not instituted within the statutory period, and that it cannot be maintained. The defendant was entitled to an *Page 670 
instruction to this effect. For this reason the judgment is set aside and his Honor's refusal to grant the defendant's motion for a directed verdict is
Reversed.